(40 South. 698.)

No. 15,922.

STATE v. FEAZELL.

(Feb. 26, 1906.)

1. WITNESSES — CRIMINAL LAW — CROSS-EXAMINATION OF ACCUSED.

The state has the right to cross-examine a witness for the accused on matters pertinent to and growing out of or clearly connected with the matters elicited on the examination in chief.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 931–948.]

2. HOMICIDE—APPEAL—REVIEW—RULINGS ON EVIDENCE.

The ruling of the trial judge that no overt act or hostile demonstration had been proved, and therefore that no foundation had been laid for the admission of proof of a previous difficulty between the accused and the deceased, is reviewable on appeal, when all the evidence on which the trial judge acted is brought up by bill of exception; but such ruling will not be disturbed unless it be made to appear that the trial judge has abused the sound legal discretion vested in him.

3. SAME—REMARKS OF COUNSEL.

An improper remark of counsel, made in the heat of argument, reflecting on the temper of the accused and suggesting that she may have used intoxicants, cannot be considered as working prejudicial error when counsel subsequently asked the jury to disregard anything he may have said that was not based on the evidence,

and the court charged the jury to disregard all such statements of counsel on either side.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 1692, 1699.]

Provosty, J., dissenting.

(Syllabus by the Court.)

Appeal from Third Judicial District Court, Parish of Bienville; James Edward Moore, Judge.

S. N. Feazell was convicted of manslaughter, and appeals. Affirmed.

See 38 South. 444, 114 La. 533.

William Chappelle Barnette and Joseph Rush Wimberly (Robert Raymond Reid, of counsel), for appellant. Walter Guion, Atty. Gen., and James Alexander Dorman, Dist. Atty. pro tem. (Price & Roberts and Lewis Guion, of counsel), for the State.

LAND, J. The accused was indicted for the crime of manslaughter, tried, found guilty, and sentenced to imprisonment at hard labor in the state penitentiary for the term of four years.

On her appeal the accused relies for reversal of the verdict on several bills of exception, which will be considered in their order.

From the imperfect record before us it appears that the deceased was the husband of the accused, and that the homicide grew out of domestic troubles between the parties, which had culminated in a judgment of separation from bed and board in favor of the wife. It further appears that on the day of the homicide both parties were in the same house and that a violent quarrel arose between them at the breakfast table. The accused had a revolver and shot the deceased twice as he was rising from the table. Denver Feazell, a son of the parties, was present on the occasion in question, and was examined as a witness for the state on the preliminary examination of the accused.

On the trial the accused pleaded self-defense, and Denver Feazell was called to the stand as a witness in her behalf, and only two questions were propounded to him by the counsel for defendant, to wit: "What did your father have in his hand when he was shot?" and "What was he doing?" The witness answered that his father, at the time he was shot, was rising from his chair with a dish in his hand, and saying "I told the truth, the whole truth, and I will kill the damn bitch." This was the statement of the witness as taken down by the court at the time. The statement as given by counsel for defendant is as follows:

"The witness having testified that when his father, the deceased, was shot, that he was rising from the chair with a dish in his hand, in the act of throwing it at defendant, and making the remark that I will kill the damn bitch."

Counsel for the defendant, having elicited this disconnected and fragmentary statement from the witness, consigned him for cross-examination. Whereupon counsel for the state asked the following questions: "How long was your mother out of the room before she came back into the room?" Defendant's counsel objected "for the reason that the witness had been asked no question by the defense touching this matter and that it was not a question touching the credibility of the witness." This objection was properly overruled by the court. The rule invoked by defendant's counsel never went further than to restrain the state from cross-examining a witness on matters not connected with matters stated on the examination in chief. State v. Baker, 43 La. Ann. 1168, 10 South. 256, and authorities there cited. The right of the state to cross-examine on matters pertinent to and growing out of or connected with matters elicited on the examination in chief is settled beyond controversy. State v. Willingham, 33 La. Ann. 538; State v. Stuart, 35 La. Ann. 1015; State v. Poynier, 36 La. Ann. 572; State v. Johnson, 41 La. Ann. 1079, 6 South. 802. The actions of the accused and the deceased at the time of the homicide are so closely connected that no intelligent account of what happened can be

given without including both. The testimony in chief of the witness was a garbled statement of the occurrence, and the state had the undoubted right to elicit on cross-examination a full and complete account of the action and conduct of both parties on the occasion of the homicide. The first bill of exception is therefore without merit.

In the per curiam of this bill the judge states that it was developed on the cross-examination of Denver Feazell "that the deceased and defendant were at the breakfast table, that a quarrel arose and became violent, that the accused left the room, and in a short time returned with a pistol in her hand and the shooting followed shortly afterwards." The natural inference from the testimony is that the action of the deceased in rising from his chair, with a dish in his hand, took place after the accused had returned to the room with a pistol in her hand.

The second bill of exception was reserved to the court's ruling out the testimony of the same witness as to a previous assault with a stick alleged to have been made by the deceased on the accused a day or two before the killing.

The judge in his per curiam states in part as follows:

"The testimony of a previous assault by the deceased upon the defendant was excluded, because I did not believe that he had made an assault or committed an overt act before he was shot. The deceased, in his dying statement made to J. F. Tooke, and which was in evidence, had stated he was conveying food to his mouth with a fork at the time he was shot first. The evidence of J. F. Tooke, who was the first to arrive at the scene of shooting, was that the deceased called the defendant into the room shortly after he was shot and asked her in the presence of the witness why she had shot him, and that her answer was, 'Because you made me so mad.' The defendant did not claim that any hostile demonstration had been made toward her, or that she had acted in self-defense."

The judge gives other reasons why he could not accept as true the testimony of the sole witness as to an overt act, and refers to his testimony on the preliminary trial on part of which the witness was cross-examined.

In his reasons for overruling the motion for a new trial, the judge says:

"The witness Denver Feazell, son of the accused, testified on the trial that his father, the deceased, had risen from his seat to very nearly an upright position with a large dish in his hand in an attitude of striking. In his evidence on committal trial, which was taken down in writing and on which he was cross-examined by the state, [he] admitted that he made the statements as taken down in his evidence on committal trial. He states: 'When my mother shot him, my father was eating breakfast. My father had no weapon on him, except a plate in his hand. He was sitting down when he was shot for the first time. He was rising from the chair when he was shot the second time. If I am not mistaken, he was rising a little from the chair when the first shot was fired.'"

We must sustain the ruling of the judge a quo on this bill for two reasons: First, because the disconnected statement of the witness, relied on as the foundation for the introduction of evidence of a prior difficulty, leaves the question of overt act in great doubt, to say the least of it; and, second, because the hostile demonstration, constituting the overt act, must be proved to the satisfaction of the trial judge. It is true, where all the evidence touching the question of overt act is before us, we will review the ruling of the trial judge, as held in State v. Golden, 113 La. 791, 37 South. 757; but the evidence must be clear and convincing to authorize our interference. In the instant case we may say that the evidence is insufficient to prove a hostile demonstration to the satisfaction of any judicial mind.

The third bill reserved to the ruling out of evidence relative to the size and strength of the deceased is without merit, for the same reasons stated in considering the second.

The fourth bill was taken to a certain remark made by assistant counsel for the state in the course of his closing address to the jury, as follows, to wit:

"That the accused was liable to do anything when she got the tiger, or maybe blind tiger, in her."

The judge in his per curiam states that when the remark was made he did not catch it clearly, being at the time engaged in preparing his charge, and on objection being made ordered the clerk to take down the remark. The judge further states that the assistant counsel for the state "further on in his argument asked the jury to disregard anything he said that was not based on the evidence, and that if he had misquoted the evidence they should disregard it."

In his charge to the jury, the trial judge told them to disregard all statements made by counsel for the state or the defense not based upon the evidence.

The remark was undoubtedly improper as a general reflection on the disposition of the accused and as an insinuation that she might be addicted to the use of intoxicating liquors. It might possibly be inferred from the remark that the speaker intended to convey to the jury the impression that the accused was in frenzy of passion or possibly intoxicated when she committed the homicide. There was evidence before the jury purporting to come from the mouth of the accused to the effect that she had killed her husband because he made her "so mad," and, speaking metaphorically, such a woman might be said to have a "tiger" in her. The other part of the remark, referring to "blind tiger," was stated as a mere conjecture, and doubtless was so understood by the jury. It is impracticable, even in the Supreme Court, to confine the argument of counsel to the facts disclosed by the record, as the briefs in this case will verify; and trial judges cannot be expected to restrain counsel from occasionally soaring on the wings of imagination while addressing juries on issues involving liberty or life. Questions of this kind must in the nature of things be left largely to the discretion of trial judges, who should be prompt to rebuke unwarranted and prejudicial statements from counsel on either side. Considering the character of the remarks, and that the jury was asked by counsel and charged by the court to disregard them, we are unable to conclude that they worked prejudice to the accused.

The fifth bill was reserved to the overruling of the defendant's motion for a new trial, and, so far as insisted upon by counsel in this court, involves the same rulings and exceptions already discussed.

Our conclusion is that the accused has had a fair trial, and it is therefore ordered that judgment appealed from be affirmed.

See concurring opinion of MONROE, J., 40 South. 700.

PROVOSTY, J., dissents.