MONROE, J.
Clemile Gauthreaux and his two brothers were prosecuted for murder; the brothers were acquitted; Clemile was convicted of manslaughter, and he has appealed. Bills 1, 2, and 3 present the point that the state was allowed six peremptory challenges to each twelve that were allowed to the defendants, to which they objected and excepted.
[1] Under the law as it stood prior to the adoption of' the Revised Statutes of 1870, and as therein incorporated, the “defendant,” in a prosecution involving imprisonment at hard labor “or more,” was entitled to twelve peremptory challenges, and the state to six. R. S. §§ 997, 998. By Act No. 24 of 1878 (Extra Sess. p. 282, § 4), it was provided that in—
“all criminal trials, where two or more defendants are jointly on trial, each defendant shall be entitled to twelve peremptory challenges, and that the state shall be entitled to six peremptory challenges for each twelve challenges to which such defendants may be entitled,” etc.
Section 5 of the act repealed all conflicting laws, and it is said that it repealed sections 997 and 998 of the Revised Statutes; but we think not. Those sections dealt only with cases between the state and “the defendant”; whereas, the act of 1878, in terms, dealt with cases where “two or more defendants” were jointly on trial. Act No. 36 of 1880 (p. 35) amended and re-enacted R. S. § 997, so as to make it read (quoting in part):
“In all criminal trials * * * for any crime, the punishment of which may be death or imprisonment at hard labor for a term of twelve months or more, the defendant in such case shall be entitled to challenge, peremptorily, * * * any number of jurors not exceeding twelve. * * * In all such cases the state shall be allowed six peremptory challenges for each defendant on trial.”
By Act No. 135 of 1898, § 14, p. 223, it was provided that:
“In cases in which the punishment may be capital and tried by a jury of twelve, the accused shall be entitled to twelve peremptory challenges and the state to six.”
Counsel for defendant contends that the law thus quoted controls because (as he argues) R. S. § 997, was repealed by Act No. 24 of 1878, and hence Act No. 36 of 1880, purporting to amend and re-enact it, had nothing to operate on. But, as we have seen, the act of 1878 did not repeal R. S. § 997; therefore the act of 1880 operated to amend and re-enact it.
The only question, then, is whether, with respect to the matter at issue, Act No. 135 of 1898 and section 997, R. S., as amended and re-enacted by Act No. 36 of 1880, can stand together; and that question, we think, may be answered in the affirmative, since if, as contended by defendant’s counsel, the word “accused” is used in the act of 1898 in the singular, then it has no greater effect upon R. S. § 997, than did Act No. 24 of 1878. On the other hand, if the word is to be considered as' used in the plural, then, though the meaning is not so clear as it *693 might be, we should think that it was the intention to allow each of the accused twelve peremptory challenges, and, by the same token, allow the state six for each twelve so allowed the accused. We have had occasion heretofore to hold, in cases where juries of twelve were required, that the state was entitled to six peremptory challenges for each defendant on trial (State v. Caron, 118 La. 349, 42 South. 960; State v. West, 120 La. 747, 45 South. 594), and our re-examination of the question has confirmed us in that view.
[2] Bills 4 and 5 disclose objections by defendant to certain questions propounded to the coroner (who was on the stand as a state witness), on the ground that they were leading. The bills show no reversible error.
Bill 6 shows that the coroner was asked by the judge whether the skull of a man is not formed of different parts, to which objection was made, as follows;
“That the judge had previously asked the. coroner several questions before this objection was made, and thereupon counsel for defendant objected to this question by the judge on the grounds: That the judge of the court has no right, .under the law, to ask questions for the purpose of assisting the state in its prosecution of the case, nor has the court any right to put leading questions to the witness; that the previous evidence of the coroner was to the effect that the deceased had come to his death by a wound inflicted by a knife in the back part of the head; that the purpose of said question by the court was to show that, at the point where the skull was penetrated by the knife aforesaid, there was a suture or seam where the sections or parts of the skull were joined, which could evidently be more easily penetrated; that thfe witness had previously testified, under cross-examination, that the knife had entered the skull at its thickest part, and, up to the time this question was asked by the court, no mention was made of any sutures or seams in the skull at that point by the witness in answer to any questions from either the district attorney or the counsel for the defense; that the witness then answered that the skull had a suture or seam at or near the point where the knife was driven into it.”
The statement per curiam is:
“The question as propounded by the court is not for the purpose of either assisting the district attorney or the firm associated with him in the prosecution, but merely for the coroner to give a correct explanation of the formation of the human skull, and for the further reason to allow the coroner to show that, if the knife entered the skull at the point where the two parts of the skull formed a suture, that the skull, at that point, is much easier entered than at any other point.”
It is not only the right but the duty of the trial judge, in a criminal case, to understand what goes on before him, since he must be in a position to decide intelligently many-complicated questions of mixed law and fact which arise in the course of the trial, and to determine, when a verdict has been reached, whether it is based upon, or contrary to, the law and the evidence. Hence it may be necessary for him at times to question the witnesses. But, as he is not permitted to comment upon the facts which may be developed, either in the course of the trial or in his charge to the jury, a fortiori is he not permitted to participate in the development of 'facts which he may think will be of advantage to one side or the' other, and which, but for his interference, might remain undeveloped. In State v. Brannon, 34 La. Ann. 944, it was said by this court:
“That the judge has the right to join in the prosecution of' one on trial before him, or assist in his defense, is not asserted in this case, arid we presume will never be contended for in any case, nor is it the least probable that the assumption of such authority by any judge, under any circumstances, would ever be countenanced by any court; but that the judge presiding at the trial of a criminal case has the right to know what is going on before him, and what are the facts proved by the witnesses, we have no doubt. It is not only his right but it is his duty to be thus informed.”
In State v. Haab, 105 La. 233, 29 South. 726, it was said:
“Bill No. 10 is to a question propounded by the judge to examine, in presence of the jury, Dr. Maylie, a medical expert, witness for the defense, touching his testimony. It is claimed that through this questioning "the judge communicated to the jury his impressions or opinion of the case. It is the right and duty of the judge to keep advised of the testimony given in a case, and to understand it’s scope, so as to *695 be able to deal with it in his charge to the jury, and on the application for a rehearing, should a verdict be given against the prisoner. If he does not understand it fully, he has the right to have it made explicit. It is well, however, for the trial judge to leave, generally, as far as possible, the conduct of criminal cases to the state officers intrusted with that duty, as the jury is very apt to form, from the acts and questions of the trial judge, an impression as to his views of the case.”
In the instant case the judge states that the questions objected to were not asked by him for the purpose of aiding the prosecution, but merely to elicit from the coroner—
■‘a correct explanation of the formation of the human skull, and for the further reason to allow the coroner to show that, if the knife entered the skull at the point where the two parts of the skull formed a suture, the skull, at that point, is much easier entered than at any other point.”
The duty of developing facts material to the prosecution devolves, however, upon the prosecuting officer, and not upon the judge, and it is immaterial whether the witness on the stand be an expert or a layman; and, whilst the judge, no doubt, has the right to satisfy himself as to what a witness may have said, it is going rather far, we think, for him to undertake to elicit from the witness other facts than those testified to, or explanations of the testimony given, which are favorable to the one side or the other. Upon the whole, we are of opinion that the questions objected to would better have been left unasked; but we are not persuaded that we should therefore set aside the verdict, since it does not appear to us that the error of the judge was sufficiently serious or developed any facts likely to have influenced the jury to the prejudice of the defendant.
[3] Bill 7 shows that a state witness was asked, “"What did you hear?” to which he replied, “I heard Harmon order the Gauthreauxs outside, and they went outside and stayed a while, and came back whenever they wanted to,” and that both question and answer were objected to on the ground that the witness “could not testify as to what he heard another person say at that time and place.” It otherwise appears from the bill that a ball was going on at Harmon’s house, that the three Gauthreauxs were present, and that the witness Was testifying to what was said to them by Harmon at or about the time of the fight which resulted in the killing; the statement per curiam being that it formed part of the res gestse.
What was said to the party thereafter charged with the killing, if relevant, was admissible, whether testified to by him who said it or by another who heard it, and it may have been part of the res gestse; but the ruling of the court on those points cannot be reviewed here in the absence of all the evidence or a more complete statement of the facts.
Bills 8 and 9 concerned the two defendants who were acquitted, and need not be considered.
Judgment affirmed.