THOMPSON, J.
 

 The defendant was tried for murder, convicted of manslaughter, and, from a sentence to hard labor in the penitentiary, takes this appeal.
 

 Five hills of exceptión are relied on as presenting reversible error in the rulings of the trial court.
 

 Bill 1.
 

 The state, in the beginning of the trial, offered in evidence the procSs verbal of the coroner’s inquest to prove the cause of the death of the party the defendant was accused of killing.
 

 Several objections were made to the introduction of the inquest, but only one is urged before this court, and that is that the court failed to specially charge the jury to disregard that portion of the proces verbal which stated that the accused had killed decedent, Robert Hides.
 

 The bill of exception above shows that the state offered the proces verbal for the sole purpose of proving the death of the deceased,
 
 *503
 
 and that the court admitted it for that purpose only.
 

 It is not pretended that the part of the procés verbal which states that the accused inflicted the wound, from which decedent met his death, was read to the jury, or that the jury had any knowledge that the procSs verbal contained such a statement.
 

 We are unable to see, however, wherein the judge can be required to charge the jury'to disregard evidence which has not been submitted to the jury, nor wherein the accused can be prejudiced by the failure to so instruct the jury.
 

 In State v. Parker, 7 La. Ann. 84, the inquest was read to the jury which contained the statement that the accused fired the pistol, which caused the death of the decedent, but the court cautioned the jury that no part of the inquest should have any influence upon their minds, except that which established the death. In view of this caution, this court declined to reverse the ruling admitting the inquest in evidence, although that objectionable part went to the jury.
 

 Having admitted the entire proces verbal, it became the duty of the court to instruct the jury to disregard that part of it which connected the accused with the felonious homicide.
 

 But here no part of the inquest went to the jury except that part showing the death of the victim of th'e homicide.
 

 The judge states, however, in his per curiam that the offering was restricted to showing the death of deceased, and that he so instructed the jury.
 

 Counsel questions the correctness of this statement of the' judge and urges that it should not be considered because the per curiam was made some five months after the trial.
 

 The record shows that the bills of exception and the per curiam were filed on the same day, to wit, September 17, 1926. The record was filed in this court September 25th.
 

 If we were to, disregard the per curiams as having been signed and filed too late, then, for the same reason, we would have to disregard all of defendant’s bills of exception.
 

 The proposition no longer admits of question that the proces verbal of an inquest by a coroner is admissible to prove tlm fact and the cause of death, and, when it is admitted for that purpose only, it is not incumbent on the judge to instruct the jury to disregard all other parts of the procés verbal which have not been admitted and which have not been read to the jury. This is in keeping with the ruling in State v. Baptiste, 108 La. 234, 32 So. 371; State v. Meyers, 120 La. 131, 44 So. 1008.
 

 Bill 2.
 

 It appears that a state witness Scott, in describing the difficulty in which the defendant stabbed the deceased, stated that another person present and a witness to said difficulty, named Willie Black, told the accused, “Don’t hit that man (decedent) any more,” which was objected to as being hearsay.
 

 In support of the objection, counsel rely on numerous citations of authority to the effect that only declarations and exclamations of the participants in a difficulty are-admissible as a part of the res gestse and may be proved by third persons, but that the criticisms, declarations, and comments of third persons or lookers-on cannot be proved other than by such persons who must be called and examined.
 

 In the first Louisana case cited by counsel. (State v. Oliver, 39 La. Ann. 470, 2 So. 194), the state sought to prove the declarations of Nancy Key made to Allen Webb as a part of the res gestae. Webb lived about 150 yards from the place of the shooting, heard the report of the gun and the outcry of Nancy Key, and went immediately to the place in a run. The objection was made that Nancy Key was-a third person — a mere observer and not one of the participants — and that her statements were hearsay. The objection was sustained,.
 
 *505
 
 and very properly so. Webb, by whom the statements were sought to be proved, was not present at the shooting, and all he knew was what he had heard Nancy Key say, after arriving at the scene of the difficulty, which was clearly hearsay. Nancy Key should have been called herself to testify as to what she saw, heard, and said.
 

 In the next case (State v. Riley, 42 La. Ann. 995, 8 So. 469), a state witness had stated, on direct examination, that he was in a cabin at the time of the homicide and did not see the shooting. On cross-examination, he was asked:
 

 “What was said at the time of the killing by the people who were present? Did they say that the accused was attacked with a knife at the time he fired?”
 

 The questions were objected to by the state and ruled
 
 out
 
 by the court. No fault can be found with that ruling. What “they said” about the difficulty and subsequent to the difficulty, and how it happened, was clearly hearsay and not a part of the res geste.
 

 The next case is State v. Ramsey, 48 La. Ann. 1407, 20 So. 904. In that case a statement was permitted to go to the jury, made by a witness, who was present when the shooting took place but on leaving and passing from the room where the shooting occurred to the front room, in answer to persons who were there'to the question, “What is the matter back there?” stated that Ramsey had shot Moffitt and shot him down for nothing.
 

 This court held that the statement was inadmissible as being that of an observer, and moreover was the expression of an opinion of the witness of the guilt of the accused. The statement was not only a narration of a fact itself, but was clearly the expression of the person, on leaving the scene, of his opinion as to what had happened and how it had occurred. The case has no pertinent application to the present case.
 

 . The court did not in that case approve the rule that statements and declarations of parties present and who are not participants, made at the time, could not be proved by third persons who were also present - and heard such declarations and statements.
 

 In State v. Bellard, 50 La. Ann. 595, 23 So. 504, 69 Am. St. Rep. 461, the defendant sought to prove contemporaneous exclamations of a group of people around the participants, characterizing the act and showing that it was not done by the defendant.
 

 The statements were not admitted because not a part of the res gestse, and the ruling was sustained by this court.
 

 The court stated that, while there are expressions in some of the text-writers that seem to favor the admissibility of the statements of third persons as constituting res geste, when accompanying the crime under investigation, it must be conceded the general rule is against the admissibility of such statements.
 

 The court could find no basis in that case for applying the exception to what the court recognized as the general rule.
 

 In State v. Howard, 120 La. 314, 45 So. 260, a state witness had testified that he was standing on the back gallery of a store when he heard the sound Of shots, and, looking in the direction from which the sound came, saw the defendant, whom he recognized, fire two shots at the deceased and then run, that he (witness) immediately ran to the front of the store, a distance of 50 or 60 feet, where he met a crowd of men coming from the scene of the shooting, a distance of 100 feet. On cross-examination, the witness was asked what the men said to or wanted of him, the object being to show, as a part of the res gestse, that they said that Coley Howard had shot Steve Hart and was then running after him up the railroad track. The ruling that the statements made by the crowd were not a part of the res gestse was approved by this court.
 

 
 *507
 
 The court held that the acts and sayings of the participants, at the time of a homicide or so soon after the fatal blow had been struck as to preclude the idea of reflection and plan, form part of the res gestaj as such may be proved by third persons,'but that subsequent statements of mere observers, made after the striking of the blow and which formed no part of the affair, cannot be so proved, but such persons must themselves be called and examined
 

 “The question is, Is the evidence offered that of event, speaking through the participants, or that of the observers, speaking about the event. In the first case, what was said can be introduced without calling those who said it; in the second case, they must be called.”
 

 It will be seen that in practically all of the cases referred to, with possibly one or two exceptions, the statements sought to be introduced were made by third persons as observers and subsequent to the difficulty and formed no part thereof. '
 

 The objectionable statements came from observers who were speaking about and giving color and character to what had occurred.
 

 In the instant case the party, Willie Black, whose statement to defendant was permitted to be proved by Scott, who was also present and heard the statement, was not only an observer and looker-on, but, in a sense, was a participant to the extent of commanding or admonishing the defendant not to hit the man any more.
 

 This statement was made contemporaneously with the difficulty, while the defendant was still advancing on the deceased, and formed a part of such difficulty.
 

 The statement was clearly a part of the res gestse. It was the spontaneous utterance of a person present and taking a part in the affair, and was as much a part of the facts- which go to make up and give character to the case as would have been the statements and exclamations of the actual combatants.
 

 A case somewhat in point is that of State v. Gauthreaux, 134 La. 695, 64 So. 680.
 

 In that case, a witness was asked, “What did you hear?” to which hé replied, “I heard Harnom order the Gauthreauxs outside.”' The objection was made that the witness could not testify as to what he heard another person say at the time add place.
 

 This court held that what was said to the party thereafter charged with the killing, if relevant, was admissible whether testified to by him who said it or by another who heard it, and it may have been a part of the-res gestae.
 

 Our opinion is that the statement made by Black to the defendant at the time of the difficulty, “Don’t hit that man (decedent) any more,” formed a part of the res gestse and was admissible in evidence through Scott, the witness who was present at the time and heard it.
 

 Bill 3.
 

 This bill was taken to the admission of a confession made by the defendant, while under arrest, to the deputy sheriff who had him in charge.
 

 The confession was made in answer to-questions propounded by the deputy sheriff. There is no pretense that the confession was not free and voluntary. The sole objection to the admission of the confession, was “that it was obtained by treatment, designed by its-effect on the mind of the accused, to compel a confession of crime,” the alleged treatment having that effect being the neglect or omission of the deputy sheriff to inform the prisoner that the party he had stabbed was dead..
 

 It is argued that, if the defendant had -beén informed that the victim of his assault was dead and that he was being arrested for murder, he, in all probability, would not have' talked so freely about the difficulty.
 

 The trial judge in his per curiam says that it was a fact that the deputy did not inform the defendant, when he arrested him, that the-
 
 *509
 
 man' lie stabbed had died. He says it is also true that the accused did not ask anything about his condition.
 

 The judge further states that it was in evidence that the accused saw the man fall and remain motionless after he was stabbed’; that the accused heard one of the dead man’s companions say, “You have killed this man,” and that accused was chased by one of the companions who cried out to the bystanders several times in a loud voice, audible to the accused, “Catch that man, he has killed a man.”
 

 In view of this evidence, the judge was of the opinion that the defendant knew, at the time of making the confession, that the man he had stabbed was dead. But whether the accused knew, as a matter of fact, that Hides, whom he had stabbed, was dead, is immaterial and can have no material bearing on the admissibility of the confession.
 

 Conceding that he did not know the fatal effect and result of the wound inflicted by him, that fact and the fact that the deputy failed to inform him of the death of Hides did not render the confession, which was otherwise free and voluntary, inadmissible. Such an omission on the part of the deputy could not, by the broadest and most liberal interpretation placed on section 11 of the Bill of Rights of the Constitution of 1921, be held to be treatment designed by effect in body or mind to induce or compel a confession of crime.
 

 It is undisputed that the officer merely asked the defendant what caused the difficulty and how it happened, and the defendant, without hesitation, told the officer all abqut it.
 

 . If this confession whs not free and voluntary and was not completely void of any sort of treatment, “designed by effect on body or mind to compel a confession,” then we are unable to imagine a. confession that would be admissible, when made to an officer of the law who was in charge of the prisoner at the time.
 

 It was’not the intention of the Bill of Rights referred to to make inadmissible any and every confession made to an officer by a party, under arrest, accused of crime. Nor has it ever been held, so far as we know, that it is incumbent on an officer to- whom a confession is made to inform the prisoner of the effect of his confession and of the magnitude of the crime with which he is charged, as a condition precedent to the admission of a voluntary confession in evidence. The cases of State v. Roberson, 157 La. 974, 103 So. 283, and State v. Bernard, 160 La. 9, 106 So. 656, have no application to the present case.
 

 Bill 4.
 

 The motion in arrest of judgment alleges that the so-called verdict rendered against the accused, is no verdict and under it accused cannot be sentenced.
 

 It appears that the verdict of the jury was indorsed on the indictment as .follows, “Manslaughter with extreme leniency.”
 

 When the verdict was thus announced, the defendant, through counsel, requested that the jury be polled. The clerk, as the name of each juror was called, read the verdict, “Guilty of manslaughter” and asked such juror, “Is that your verdict?” to which each and every juror answered in the affirmative.
 

 There is no legal requirement that a verdict of a jury should be reduced to writing, and, when a verdict is reduced to writing, there is no law which would prevent the verdict being amended 'orally by the' jury before its recordation and while the jurors are yet in their seats and in open court.
 

 Whatever illegality there might have been in the original verdict, as written, was corrected and cured when and as the verdict was read by the clerk and affirmed by the jurors.
 

 In State v. Hightower, 136 La. 310, 67 So.
 
 *511
 
 13, the foreman of the jury announced verbally that the verdict was “manslaughter,” whereupon the clerk announced, “We, the jury, find the accused 'guilty of manslaughter” ; the jury was then polled, with respect to the verdict, as thus amend.ed by the clerk, with the result that each of the jurors declared it to be his verdict.
 

 This court, in considering the motion in arrest of judgment, held that no sufficient ground was shown for sustaining the motion, for, where the intention - of the jury is obvious, but imperfectly expressed, the verdict may be reduced to proper form by an officer of the court, in open court and in presence of the jury, and. affirmed, as thus perfected, by the polling of the jury.
 

 The fact that the verdict, as announced by the foreman in the cited case, was verbal, whereas the original verdict in this case was in writing does not alter the situation. An irregular, imperfect, or defective verdict may be corrected, in the manner and under the circumstances as stated in the case, supra, whether such verdict be returned by the jury verbally or in writing.
 

 It is contended by counsel that, when the clerk polled the jury, he did not use the words “guilty of,” but read the verdict as indorsed on the indictment, coupled with the question, “Is -that your verdict?” and that the entry as recorded in the minutes Is incorrect.
 

 We are bound to accept the minutes as recorded and the per curiam of the judge whose recollection accords with the minutes, in the absence of any contrary proof in the record.
 

 It is finally suggested in connection with this bill that, if the court does not feel justified in sustaining the motion in arrest, the case should be remanded to have the minutes corrected.
 

 The record shows that after the motion in arrest was overruled the counsel for defendant filed a motion to correct the minutes in the respect referred to, and this
 
 motion
 
 was set down for trial, but thereafter the counsel abandoned the motion to correct the minutes, and asked for and obtained the consent of the court to withdraw the said motion.
 

 In these circumstances,.we do not feel authorized or justified in remanding the ease in order that defendant may renew a motion which he had expressly abandoned and withdrawn in the court below.
 

 Bill 5.
 

 This bill relates to the overruling of a motion for a new trial which presents nothing for the court to consider, beyond the matters embraced in the first four bills ’ of exception.
 

 The conviction and sentence are affirmed.