(120 So. 865)

No. 29683.

## STATE v. ASHWORTH.

Feb. 11, 1929.

Elmer L. Stewart, of De Ridder, for appellant.

Percy Saint, Atty. Gen., and John J. Robira, Dist. Atty., and S. H. Jones, Asst. Dist. Atty.; both of Lake Charles (E. R. Schowalter, Asst. Atty. Gen., of counsel), for the State.

THOMPSON, J. The defendant was tried for murder, convicted of manslaughter, and sentenced to hard labor for a term not less than 13 years nor more than 20 years.

The errors claimed to have been committed by the lower court are presented in 25 bills of exception, to which is added a suggestion in the brief that the sentence is illegal because the minimum imprisonment exceeds that authorized by law.

The first complaint is that the court refused counsel's request to permit the mother of the accused to sit by counsel and assist him in the trial of the case.

The denial of the request was based on a rule of the court which excludes from that part of the courtroom, reserved for the court, jury, and attorneys, all persons not officers of the court.

We can see nothing wrong in observing the rule in this case, and certainly no injury is shown sufficient to justify a setting aside of the conviction.

The fact that a distant male relative of the deceased was permitted to advise with the district attorney did not alter the legal situation. The mother of defendant sat outside the rail, and was frequently consulted by defendant's counsel.

The second bill relates to the refusal to sustain a challenge for cause of a juror, Lewis, thereby forcing defendant to challenge peremptorily.

This juror had heard a cousin of the deceased relate the facts of the killing some time before the trial, and testified that the facts as stated made some impression on his mind at the time, but at the present time he had no impression whatever, either for or against the defendant, and could try the case with a free and open mind, solely on the evidence produced.

The examination failed to develop any feeling of prejudice on the part of the juror against the accused, and his friendship for the deceased and his family was not shown to be any stronger than it was for the accused and his family.

The ruling was correct.

Bill 3 purports on its face to have been reserved to the statement of Mack Clark as to an exclamation made by the mother of the defendant immediately following the fatal blow and in the presence of the defendant.

It appears from the evidence of Clark, at-

tached to the bill, that right after the killing Ella Ashworth, mother of defendant, ran up to the deceased, and in presence of defendant, and exclaimed, "Oh, Lord! Fred has killed Cass, the best friend he had in the world, and killed him for nothing." When this statement was repeated by the witness Clark, the counsel for the defendant interposed:

"I want to ask that any declaration here by a third party be excluded from the record and the jury instructed to disregard it."

The judge refused the request for two reasons: First, because the same witness had previously repeated the exclamation in answer to the district attorney and no objection was made, and three other witnesses had already testified without objection to the same statement. The testimony having gone to the jury without objection, it was not within the power of the judge to keep the jury from considering it.

The second reason given by the judge is that the exclamation made by the defendant's mother was spontaneous, there being no appreciable time between the striking of the deceased by the defendant and the utterance of the mother, and hence formed a part of the res gestæ.

We do not find it necessary to decide, and do not decide, whether or not the exclamation made by the mother of the defendant was of the res gestæ and could be given in evidence by a third party who was present and heard it.

In the recent case of State v. Davis, 162 La. 500, 110 So. 733, the authorities on the subject were reviewed, and it was held that, where the evidence sought to be introduced is of events and remarks speaking through the participants or observers, such evidence is admissible as constituting a part of the res gestæ, but that remarks made by observers about the event after it happened, and who undertake to state what had occurred and in what manner it occurred, were not part of the res gestæ.

We prefer to rest our affirmance of the ruling on the first reason given by the judge.

Bill No. 4. A state witness had testified that the defendant and the deceased were drunk, whereupon the defendant wanted to know who else in the crowd was drunk. The court refused to permit the witness to answer the question, and rightfully so.

The fact, if it were true, that other people present, and who had no part in the difficulty, and who had not been called as witnesses, were drunk, could have no possible effect for or against the accused, and could shed no light on the issue under inquiry.

Bill No. 5. A witness, Theodore Perkins, was placed on the stand and examined by the state and cross-examined by the defendant at great length. On his first cross-examination the witness had stated that he had attempted to strike the defendant by throwing a stick at him after the defendant had knocked the deceased down and was about to "stomp" him. The subject of the stick was not referred to either in the direct or redirect examination by the state, but on the recross-examination the witness was asked where he got the stick which he threw at the defendant.

An objection of irrelevancy was interposed and sustained.

Neither the bill nor the evidence of the witness attached thereto suggest any abuse of the right of the judge to put an end to an unreasonable and apparent purposeless cross-examination. The question of where the witness got the stick which he threw at defendant after the latter had struck the fatal blow was wholly immaterial.

Bill 6. Riley Doyal had testified before the coroner's jury that on the night of the killing Fred Ashworth, the defendant, stepped off the porch into the yard, walked over

and picked up a 2x4 club, and then turned back toward the walk and hit Cass Perkins.

The witness, having been sworn for the state, on cross-examination by defendant, denied that he saw defendant pick up the stick and strike the deceased, and further stated that it was too dark on the occasion of the homicide for one to see another pick up a club.

Whereupon the district attorney, being taken by surprise, asked the witness if he had not sworn before the coroner's jury that he saw the defendant pick up a 2x4 club. To which question the defendant objected for the reason that it was an attempt by the state to impeach its own witness.

The objection was overruled, and the witness answered in the affirmative.

The counsel does not stress this bill in his brief, merely noting that such a bill was reserved.

There was no error in the ruling.

In State v. Williams, 111 La. 179, 35 So. 505, this court said:

"It is well settled that, where a party is surprised by the unexpected testimony of his witness, he may be permitted to interrogate as to previous declarations inconsistent with the testimony given; the object being to test the recollection of the witness, and lead him, if mistaken, to review what he has said."

■ Bill 7. A state witness, Arthur Perkins, was asked, on cross-examination, "Who went after the doctor for Cass Perkins?" which was objected to as irrelevant and immaterial, and the objection was sustained. It was not contended that the defendant sent for the doctor, but the purpose was to show that defendant's mother sent for him on her own volition. The testimony was wholly immaterial.

But aside from that the testimony of the witness attached to the bill shows that he was uncertain as to who went for the doctor or who suggested the calling of a doctor.

The witness did not say it was defendant's mother who sent for the doctor.

Bill 8. This bill is of such little importance that it was not discussed in brief, and we shall not notice it further than to say that the purpose of the question, which was not allowed to be answered, was to find out where Ella Ashworth was when she uttered the words referred to in bill 3. The bill on its face shows an utter lack of merit.

■ Bills 9, 10, 12, 14, 15, 16, 17, 18, 20, 22, and 23 all have reference to the admissibility of testimony concerning a difficulty which occurred some two hours before the homicide at the same place, and in which difficulty it was contended that the deceased made threats against the defendant. The pivotal question at issue was whether or not an overt act had been established, and it was on the theory that an overt act had not been established that the evidence was ruled out.

Counsel for defendant in his brief says: "That while it is established in the jurisprudence of this state that the trial judge may determine whether an overt act by the deceased has been proven, yet your Honorable Court will pass upon this fact if sufficient evidence is contained in the record to show that an overt act had been proven. This we maintain is clearly shown by the record."

The difficulty counsel encounters is that all of the evidence bearing on the question of an overt act is not before the court. Counsel must admit that the court would not be justified in overruling the district judge on such fragmentary parts of the evidence as brought up under the several bills of exception.

The judge says in his per curiam that the great preponderance of the testimony, and all the testimony that could be believed, showed that the deceased approached, unarmed, the defendant, asking defendant to stop fussing with defendant's own brother, when defendant crushed deceased's head as the

latter turned to look at defendant, all without any overt act on the part of the deceased.

"Whether or not there has been sufficient evidence of the dangerous character of deceased or of his previous threats against accused is a question of law to be decided by the trial judge, whose ruling will not be reversed unless manifestly erroneous, even though that ruling be founded on the judge's disbelief of the witnesses to overt act, for the sufficiency of the evidence and the credibility of the witnesses are questions left to the discretion of the trial judge; and his statement in the bill of exceptions that foundation was not laid must be accepted when the entire evidence on the matter is not in the record; or is not sufficiently presented." Marr's Crim. Juris. (2d Ed.) §. 70; State v. Boudreaux, 137 La. 227, 68 So. 422; State v. Feazell, 116 La. 264, 40 So. 698; State v. Simmons, 121 La. 561, 46 So. 651; State v. Lively, 119 La. 363, 44 So. 128.

Bills 11, 13, 19, and 21 are not discussed in defendant's brief, but we have examined them, and find no merit in any of them.

■ Bill 24 was reserved to three paragraphs of the judge's charge to the jury, the objection being, not that the charge was not good law, but that it was a direct comment on the evidence.

The charges complained of are as follows:

"If you should find in this case that Fred Ashworth and Elmer Ashworth were in a difficulty, or were about to get into a difficulty, and that Cass Perkins as a peacemaker, unarmed, peacefully sought to stop or prevent the difficulty, approaching Fred Ashworth with such peaceful purpose; Fred Ashworth knew this but nevertheless struck Cass Perkins, with a weapon you find to be deadly, and killed him, then and in that event the killing would be murder."

"One who seeks or brings on a difficulty cannot plead self-defense, even though he be violently attacked. Hence if you should find that Fred Ashworth armed himself with a deadly weapon, sought and brought on the difficulty with Cass Perkins, the killing would be murder, although at the time of the killing Cass Perkins was armed with a knife, unless Fred Ashworth first in good faith retreated or offered to retreat or retire from or decline the difficulty."

"A defendant may not kill another merely because that other is drunk and continues to approach the defendant, after being told to stop. If you should find in this case that Cass Perkins was drunk and continued to walk toward Fred Ashworth as a peacemaker or for some other peaceful purpose, after being told to stop and that Fred Ashworth knew of such peaceful purpose and did not honestly believe that he was in any danger, but nevertheless, Fred Ashworth killed Cass Perkins, the killing would be murder."

We fail to find any room for complaint on the score that the charge embraced in the three paragraphs was a comment on the facts. The judge was attempting to charge on the phases of the case as presented by the state and defense, and in each instance stated what the verdict should be if the jury should find a given state of facts. Furthermore, the judge expressly charged that the jury was the sole judge of the facts and that he had no right to comment thereon.

■ In the closing part of his brief counsel for defendant says that the sentence is illegal, for the reason that under the law the lesser time of imprisonment cannot be more than one-third of the greater term of imprisonment imposed.

Counsel cites Act 222 of 1926.

An examination of the act referred to does not support counsel's contention, for the minimum sentence authorized by that act is two-thirds of the maximum, and not one-third as counsel contends.

The minimum in the instant case is less than two-thirds of the maximum.

■ We are not disposed to decide whether Act 222 of 1926 was constitutionally

adopted, for the reason that the question is not raised in brief or otherwise.

Besides, if the act was declared illegal, it would not affect the sentence which would be valid under the old law.

For the reasons assigned, the conviction and sentence are affirmed.

O'NIELL, C. J., dissents from the ruling on Bill No. 3, taken in connection with the ruling on Bill No. 5; dissents from the ruling that the question of sufficiency of the evidence of dangerous character or previous threats of the deceased is a question of law, to be decided by the trial judge, etc.; and is of the opinion that the Act 222 of 1926 is not valid, because an amendment proposed in the Senate was rejected, but the bill was afterwards voted on in the House of Representatives as if the amendment had been adopted in the Senate. See Senate Journal, pp. 921 and 926, and House Journal, p. 1234, July 1, 1926.