352 So.2d 815 (1977)
Billy Joe YOUNG
v.
STATE of Mississippi.
No. 50023.
Supreme Court of Mississippi.
November 30, 1977.
Joe B. Timmons, Tupelo, for appellant.
A.F. Summer, Atty. Gen. by Pete J. Cajoleas, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and ROBERTSON and SUGG, JJ.
*816 SUGG, Justice, for the Court:
The defendant, Billy Joe Young, was convicted of armed robbery and sentenced to a term of twenty years imprisonment by the Circuit Court of Lee County. Defendant first contends that the trial judge should have granted his motion for a mistrial. The motion follows:
May it please the Court, at this time the defendant would like to move for a mistrial today for the following reason: That one of the members of the jury panel has indicated that they are concerned because they have had a former relationship with the defendant or his family. Shows not only concern but seems to be upset concerning this matter.

*817 It is our position that with one of the members of the panel being upset, showing concern, it has to influence the rest of the jury panel. Of course, we cannot know whether they have discussed it or what has been said among them, but they have been together now for a day and a night. They have been together at three meals.
We feel that the jury as it is made up now could not give the defendant a fair trial in that one of the members has shown concern or may have consulted with some of the other members of the jury panel concerning the defendant and concerning her past relationship with the defendant.
The circumstances that led up to this motion are rather unusual. Before the jury was questioned for cause defendant was permitted to sit in the courtroom rather than with his counsel at the counsel table within the bar of the court because the defendant felt that a critical question would be the identification or lack of identification of the defendant by witnesses to be presented by the state. At the beginning of the second day of the trial, the trial judge informed both the state and defense attorneys that he was advised by one of the bailiffs for the jury that a juror stated to the bailiff that she recognized the father of the defendant in the courtroom and she now knew who the defendant was and what family he belonged to. The judge further advised the parties that the juror told the bailiff this fact gave her some concern and the bailiff stated that the juror appeared to be upset. Defendant moved for a mistrial for the reasons stated above and the juror was then examined by the trial judge and the attorneys. The judge satisfied himself that the juror could act fairly and impartially even though she was acquainted with the family of defendant. The state had no objection to excluding the juror and using the alternate juror. However, the defendant did not want to excuse the juror and use the alternate juror, but insisted on his motion for a mistrial.
The juror had not discussed the case with any of the jurors except to tell the juror with whom she shared a room that she knew defendant's family and, had she been aware of that, she would have preferred not to have been on the jury. Based on the above events the trial judge ruled as follows:
All right. We'll proceed on that basis.
Incidentally, the reason I overruled the motion for a mistrial is that the Court requested that the jurors not talk about the case even among themselves. The juror states that she has not talked about this case. That the only thing she did was tell the lady that she stayed with last night that she did know the family and had she been aware of this fact, she would preferred not to have been on the jury. The Court would not think that is sufficient to have any effect on another juror one way or the other, nor does it consider that a discussion of the case.
All right. I'm going to let the jury stay constituted as it is.
Defendant argues that the juror's conversation with another juror, her concern, and her admitted condition of being upset would have the effect of influencing the other jurors on the panel with possible prejudice to the defendant. We have not been able to find any authority on facts identical or similar to those outlined above and none has been cited. The juror's reluctance to serve as a juror because of her acquaintance with the defendant's family, coupled with her expressed concern to one juror without indicating how she felt about the defendant or his family, without more, does not convince us that the other members of the panel would be influenced or prejudiced either for or against the defendant. The trial judge was satisfied that the juror would decide the case on the law and evidence and not on the basis of her acquaintance with defendant's family. We are of the opinion that the judge handled this very delicate situation in the proper manner and did not commit error by overruling the motion for a mistrial.
Defendant also contends that he was denied a public trial contrary to the provisions *818 of Section 26 of the Mississippi Constitution of 1890. After the jury was empanelled the state moved that an individual, who was possibly the brother of defendant and who resembled the defendant, be excluded from the courtroom during the questioning of witnesses for the state who would be called on to make an in-court identification of the defendant. The state's attorney noted that defendant was sitting in the part of the courtroom reserved for spectators rather than at the table with his counsel, and had no objection to the defendant sitting in the courtroom among the spectators. The state argued that having a person with a marked resemblance to defendant sitting near the defendant among the spectators was for the purpose of confusing any in-court identification of the defendant by the state's witness. The trial judge sustained the motion, whereupon, defendant moved for a mistrial and, on appeal, argues two propositions: (1) Exclusion of any person from a courtroom denies defendant a public trial and (2) a witness should be so positive in his in-court identification of the accused that the removal of any person from the courtroom was unnecessary.
In our opinion the first argument under this assignment of error is not well taken because exclusion of one person from the courtroom did not deny defendant a public trial. In Norwood v. State, 258 So.2d 756 (Miss. 1972) the court conducted a hearing on motions of the defendant to suppress evidence and suppress declaration of the defendant from approximately 4:00 o'clock p.m. until 6:00 o'clock p.m. The hearing was held outside the presence of the jury and during the course of the hearing the courthouse doors were locked at 5:30 p.m. Defendant moved for a mistrial on the grounds that he was denied a public trial. The motion was overruled, and the trial judge commented that he had no knowledge of any door being locked, that many spectators had been in attendance from 8:30 in the morning until after 5:00 p.m., and that spectators were present in the courtroom during the hearing on defendant's motions. We stated in Norwood:
The term `public trial' contemplated by our Federal and State Constitutions is a trial which is not secret and one that the public is free to attend. To a great extent it is a relative term and its meaning depends largely on the circumstances of each particular case. Hampton v. People, 171 Colo. 153, 465 P.2d 394 (1970). (258 So.2d at 763).
We hold that exclusion of one person from the courtroom does not violate the right of the defendant for a public trial as guaranteed by Section 26 of our Constitution and the Sixth Amendment to the United States Constitution.
In support of the second contention under this assignment of error, defendant argues that, if the exclusion of a person who resembled the defendant were allowed, the judge should logically remove any spectator, attorney, bailiff or juror bearing resemblance to the accused on the basis that his presence might confuse a witness.
This argument presents a novel question which has not been presented to this Court. The state cites the case of State v. Morris, 259 La. 1001, 254 So.2d 444 (1971) in support of the propriety of the action of the trial court in excluding the spectator in question from the courtroom. In Morris, during the trial, counsel for the defense moved that defendant, a Negro, be permitted to sit outside the rail with the spectators in anticipation that a state witness would be called to identify him. The motion was denied and the court affirmed in the following language:
It is possible, under certain circumstances not existing here, that the trial judge might permit the accused, at his own request, to be seated in the spectator section of the courtroom. Cf. State v. Ashworth, 167 La. 1085, 120 So. 865 (1929). However, generally speaking, such a procedure is impermissible for the reason that it may furnish a basis to contend that the accused was not present at all important stages of the trial as Articles 831-836 of the Code of Criminal Procedure require. Such a procedure would also tend to impair the decorum of *819 the trial so essential to an attitude of deliberation, impartiality and fairness. (254 So.2d at 446).
Defendant then moved that several Negroes of the approximate age and configuration of the defendant be seated alongside him to make the identification more realistic. Defendant argued that knowledge of the courtroom procedure was so widespread any witness called to identify defendant would necessarily point to him because he was a Negro seated at defendant's counsel table alongside his white attorney. The court held that an in-court identification satisfies the requirements of due process if, "[J]udged by the totality of circumstances, the identification procedure is not unnecessarily suggestive and conducive to irreparable mistaken identification  so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (254 So.2d at 447). The court noted that the identification procedure followed was the traditional procedure in use and stated:
Just as the State may not resort to impermissibly suggestive procedures for in-court identification of a defendant during trial, defense counsel may not avail himself of procedures designed to unduly confuse or handicap a State witness called to identify the accused. Thus the court was under no obligation to seat several Negroes of defendant's approximate age and configuration alongside defendant in anticipation of a state identification witness being called to identify defendant.
The end result of our rulings on this subject is that the trial judge, within statutory guidelines, is to be accorded a wide discretion in the conduct of the trial with due regard to the facts and circumstances of each case. There are times in the trial of cases when the conduct of the accused, counsel and the witnesses must be regulated to preserve and maintain order, often a delicate and demanding undertaking. A trial is not, and should not be, a display of theatrics or tactics of counsel or the accused. It is, and should be, a decorous, orderly and fair search for truth, to the end that justice is served. The judgment on maintaining these standards is best left, in the first instance, to the trial judge, who is present on the scene and best qualified to observe and understand the complexities of the whole trial. Since we find no abuse of discretion here we shall not set aside the rulings complained of. (254 So.2d at 447).
We find the reasoning of the Louisiana Court persuasive and reject defendant's contention that he was entitled to have seated near him a person bearing a marked resemblance to him when the state called a witness for the purpose of making an in-court identification. Furthermore, we have held that a defendant may be required to stand up in the presence of the jury and a witness so that the witness may have a clear view of the defendant for purpose of identification. In Thames v. State, 221 Miss. 573, 73 So.2d 134 (1954) this Court stated:
By far the greater number of the cases support the general proposition that upon the trial of a criminal case the defendant may be required to stand up in the presence of the jury and a witness so that the witness may have a clear view of the defendant and identify him as the person about whom witness is testifying, if the witness can do so, and that compelling the defendant so to stand up in court for identification does not violate his constitutional privilege against compulsory self-crimination. Federal Reserve Bank of Atlanta, for use of American Surety Co. of New York v. Atlanta Trust Co., 5 Cir., 91 F.2d 283, 117 A.L.R. 1163. (221 Miss. at 579, 73 So.2d at 137).
We therefore conclude that the court did not err when it excluded the spectator who resembled defendant from the courtroom.
Defendant also assigns as error admission of his confession and contends that it was obtained as a result of a beating administered to him by two officers of the Tupelo police force. We have carefully considered the evidence offered by the state and the defendant on this question and *820 have concluded that the confession was not a result of physical violence and was properly admitted into evidence.
Defendant also contends that the verdict of the jury was against the overwhelming weight of the evidence and argues that none of the employees of the bank actually identified the defendant as being one of the persons who participated in the robbery. The only witness who made any identification of the defendant was Mrs. Mary Irby, the branch manager and teller of the Harrisburg Bank which was robbed. She testified that three boys came into their bank and each wore toboggans and dark shades. The toboggans were pulled down almost to the ears and the dark shades hid the eyes of each robber. The one nearest to the witness wore a floral shirt and she testified that he came through the door directly to her cage with a pistol in his hand.
She was within a foot or so of the robber and said she could probably identify his features but couldn't be sure because of the disguise. She then pointed to the defendant seated among the spectators and said he had the same features and appeared to be the person who had the pistol in his hand. She also stated that the defendant's appearance was different from that on the day of the robbery in that his hair was shorter and he did not have a moustache. She was not certain that defendant was the robber nearest her in the bank, and on cross examination stated that she could not positively identity the defendant as being the person who robbed the bank.
Defendant correctly asserts that Mrs. Irby did not positively identify the defendant and her testimony, standing alone, would not be sufficient to convict; however, her testimony and defendant's confession is sufficient to support the verdict of the jury.
AFFIRMED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and ROBERTSON, WALKER, BROOM, LEE and BOWLING, JJ., concur.