LAND, J., takes no part, not having heard the argument.

---

(44 South. 1008.)

No. 16,636.

STATE v. MEYERS.

(Nov. 18, 1907.)

1. CRIMINAL LAW—EXPERT EVIDENCE.

Not error to admit testimony of an expert for the purpose of proving the meaning of terms of art.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1059.]

2. WITNESSES—TESTIMONY—IMPEACHMENT.

Foundation not sufficiently laid to admit impeaching testimony.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 1234-1242.]

3. SAME—MATERIALITY.

The contradiction was material to the issue as shown by statement in bill of exceptions.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 1234-1242.]

(Syllabus by the Court.)

Appeal from Criminal District Court, Parish of Orleans; Frank D. Chrétien, Judge.

George Meyers was convicted of murder, and appeals. Reversed and remanded.

Adams & Otero and Henry Oscar Hollander, for appellant. Walter Guion, Atty. Gen., James Porter Parker, Dist. Atty., and Henry Mooney, Asst. Dist. Atty. (George Eugène Williams, of counsel), for the State.

BREAUX, C. J. The testimony disclosed, as stated in bills of exceptions, that George Meyers was charged with having taken the life of James Taylor, that he was indicted for murder on the 9th day of April, 1907, and that an unqualified verdict of guilty was found against him.

In addition to bills of exceptions, taken during the trial, there is a motion for a new trial (also brought up by bill of exceptions) and a motion in arrest of judgment.

Statement of Issues in the First Bill of Exceptions.

In the first bill of exceptions it is stated that the prosecution offered Dr. E. F. Bacon, an assistant coroner, as a witness to explain the nature of the wounds on Taylor, the deceased man's body.

Defendant, through counsel, objected to this testimony on the ground that Dr. Bacon had never seen the body of the deceased (a fact not disputed).

The trial judge stated in his narrative of facts, forming part of the bill of exceptions, that the assistant coroner, Mioton, who held the autopsy, was away from the state; that the procès verbal of the autopsy had been admitted in evidence to the extent that it was admissible, and that by it it was shown, to quote the words of the narrative:

"That the deceased died of a penetrating gunshot wound, tenth dorsal vertebra, injuring cord and causing paraplegia ; that the bullet entered one-half inch to the right of spinal column."

The trial judge further stated that there was another wound described in the procès verbal of the assistant coroner, as a compound, depressed, gunshot fracture of the occipital region just about the center and one and one-half inches above the atlas.

The trial judge further said that the state offered Dr. Bacon, assistant coroner, as a witness to explain to the jury the meaning of the technical terms used in the procès verbal of the autopsy; that, without this explanation of the witness, the jury would not have understood the technical words used by the coroner in the procès verbal.

A copy of the testimony of this witness is annexed to and forms part of the bill of exceptions.

#### Statement Contained in Second Bill of Exceptions.

We pass from this first bill to the second bill of exceptions. It differs but little from the first just stated. The trial court makes no comment in regard to it, and for that reason it will not be referred to again.

#### Bill of Exceptions No. 3.

We take up the next bill of exceptions. By it it appears that the defendant sought to prove the reputation of the deceased with whose killing defendant is charged.

This testimony was excluded on the ground that no overt act on the part of the deceased against defendant had been shown. Of this later.

#### Bill of Exceptions No. 4.

The next point is set forth in bill of exceptions No. 4. The testimony offered by the defendant was excluded by the court on the ground that it was entirely irrelevant, and had no bearing whatever upon the cause.

120 LA.—5

For the purpose of identifying the issue, we will state that the objection grew out of a question addressed to the witness Diardana, regarding the statement he had made as a witness years ago in another criminal case.

#### Bill of Exceptions No. 5.

This brings us to the statement contained in the fifth bill of exceptions, taken by the defense, whose contention was (as is made to appear by this bill of exceptions) that sufficient foundation had not been laid to enable the prosecution to contradict one of its own witnesses by the testimony of Mr. Henry Mooney, assistant district attorney.

We take up the motion for a new trial, the points of which we will note only to the extent that they are not already covered by the bills of exceptions to which we have before specially referred.

The points (not before urged in any of the bills of exceptions) are that the verdict was contrary to law and the evidence; that the jury failed to promptly consider the doubts favorable to the defense; that the guilt of the defense was not shown; that the body of the deceased was not identified as the body of the person the accused was charged with having murdered; that the verdict was not responsive to the charge.

It presents the last ground for consideration. It is that, if the judgment be executed, it would deprive defendant of his life without due process of law; that the judgment, if executed, would be a violation of article 7 of the Constitution of the United States.

The foregoing states sufficiently the different points for decision.

#### Opinion.

We take up for decision the first point contained in bill of exceptions No. 1, to wit, that the assistant coroner was permitted, over objection of defendant's counsel, to explain the different wounds by reference to the procès

verbal, and this, although he had never seen the body of the deceased; that the procès verbal of another assistant coroner, before named, was taken as a basis for the testimony of Dr. Bacon.

The procès verbal of the coroner was admissible to prove the fact and cause of death only. The proposition no longer admits of reasonable denial. It is imbedded in the jurisprudence of this state. Judge Preston, of this court, in State v. Parker, 7 La. Ann. 84, in an elaborate opinion, expressed the view that part of the inquest is admissible to prove the fact and cause of death—nothing further, however. The prosecution is not permitted by anything connected with the procès verbal to prove that the accused is the one by whom the crime charged was committed.

This view has been reaffirmed a number of times, notably in a recent decision, that of State v. Baptiste, 108 La. 234, 32 South. 371. In that case the court said, in substance, that the fact and cause of death were provable by the procès verbal. But in every instance it should be thus expressly limited.

No objection is urged by the defendant on the ground that any statement of the procès verbal went further than before stated. It is not contended that the inquest proved or tended to prove that the accused was in any manner connected with the killing. The fact that it is stated in the procès verbal that the balls entered the back of the deceased is not a charge that the accused did the shooting, although it would not be unreasonable to infer that the man shooting was standing behind the deceased at the time.

But this phase of the evidence is inevitable. If the cause of death can be shown, it certainly can be established that the wound began in the back, and ranged through the body to the front of the body.

The statement of the trial court sets forth the extent of the testimony and the limit that he placed upon it in allowing it to go to the jury. The correctness of the court's statement, made part of the bill of exceptions, is not questioned in the least. It was that it was admitted only to the extent that such procès verbals are admissible, nothing further.

The defendant through counsel urged for the first time on appeal that, while the testimony of experts is admissible to explain technical terms not understood by the layman, it must appear that the primary evidence containing these technical terms was previously introduced in evidence, and that the expert testimony was specially directed to the admitted evidence.

That may be all very true, but are we to assume that the evidence was not before the court? Should not the defendant have timely urged the objection?

It is nowhere stated as an objection in the pleadings, and does not appear to have been raised before hearing on appeal. It devolved upon the defendant to present his grounds clearly before the court. The onus of proof was with him.

"The copy would have to be produced on objection, but not if no objection were raised." 2 Wigmore on Objection, p. 1271.

Here not only there was no objection, but the court in the per curiam stated that the procès verbal was produced.

We have found authority upon the subject; i. e., decisions cited infra. In the Taylor Case, to which we refer hereafter, defendant objected to the introduction of the procès verbal of the coroner's inquest (it was different in the present case; i. e., there was no objection made to secondary evidence) on the ground that under the Constitution the accused had the right to be confronted with the witnesses against him; that the evidence was secondary and inadmissible until it was shown that the coroner and physician who made the inquest could not be introduced as a witness.

The judge overruled the objection, and admitted the procès verbal to prove the corpus delicti.

In the Parker Case, 7 La. Ann. 83, the judge specifically charged and cautioned the jury that they were not to give any effect to that part of the inquest in which it was stated that the accused inflicted the wound.

"It is highly probable," said the court in the Parker Case, "that the judge did so caution and instruct them, but it does not certainly appear by the record." For that reason the court annulled the judgment of the district court. State v. Taylor, Manning's Unreported Cases, 367.

The secondary evidence admitted was legal enough, for experts may explain the meaning of technical phrases. Moreover, the special terms of the science of medicine were used. Physicians at times have an abundance of technical words.

The trial judge held that they were beyond the intelligibility of the jurors. In consequence he permitted them to be simplified by the witness to suit the capacity and requirements of those not technically trained in medicine.

The definition strictly of technical terms not understood by the layman is admissible. Each case upon this particular point stands upon its facts. The definition in the procès verbal was technical. That of the physician was the popular explanation. From the foregoing the conclusion is that the procès verbal of the autopsy was properly before the court, that it was properly by instruction of the judge restricted to proof of cause of death, and the testimony of witness to explain cause of death was legal and proper.

We pass to the next bill of exceptions, No. 2. In regard to it, it may be said that it is of no importance, as it presents no question materially bearing upon the issues. It follows that it has no merit.

The next bill of exceptions No. 3 is not insisted upon in the written argument on appeal. It shows that a witness for the state was questioned regarding the reputation of the deceased. The state objected. The objection was properly sustained by the court.

Reputation itself (unconnected with any other issue) that the deceased was a violent and dangerous man is not admissible. State v. Vallery, 47 La. Ann. 182, 16 South. 745, 49 Am. St. Rep. 363; State v. Labuzan, 37 La. Ann. 489.

We come to the next bill of exceptions, No. 4. It appears that Diardana, a witness for the state, was asked upon cross-examination: "Were you a witness in the Luciano Case?" to which he replied, "Yes."

Excluding immaterial and irrelevant evidence cannot be prejudicial to an accused. We leave this bill with the statement that it has not a particle of merit.

Bill of exceptions No. 5 has received our careful attention. The point it presents is that the state cannot contradict defendant's witnesses without first laying the required foundation by notifying him of the name and the person to whom the contradictory statement was made, the time, and the place.

The witness Smith, a witness for the state, whose testimony the state sought to impeach, was not informed of the time and place nor of the name in the course of his cross-examination. He was asked in regard to the appearance of the deceased just previous to the shooting, and particularly whether he held a lighted cigarette in his left hand. To this he answered that he did not remember.

Without the least warning the examiner continued with the examination, and the attention of the witness was not called to any prior statement.

The prosecuting officer followed the usual mode of examining a witness, and did not for a moment stop to inform him or to warn him in any way that the purpose was to contradict him.

Afterward the assistant district attorney, as a witness, testified that in examining the witness in his office he had asked his name and recalled the question he asked him, to wit, to describe the position of the dead man at the time that the prisoner approached him; that the witness told him "that the deceased had his right hand in front this way, and that he had a lighted cigarette in the left hand, and that he was coming up the street when this man approached him."

The witness was not interrogated regarding his right hand for the purpose of his impeachment, and, as to his left, he was asked if he had stated about a cigarette in his left hand. As to the latter, he answered as before stated. There was not an intimation of time or place or of intention to impeach. The answer of the witness, neither affirming nor denying, does not change the application of the rule. See Stephen's Evidence, verbo "Impeaching Witnesses."

The purpose of this testimony was to impeach the witness, and it did evidently impeach him without, as we think, sufficiently notifying the witness of the purpose intended at the time that he was examined.

This is an important phase of the case. It is incumbent upon us to decide whether the rule should be enforced as heretofore. This rule is earnestly criticised by a commentator on evidence, in a work of recent date. Wigmore, § 1028, and note.

We are informed by the work that it is different in England and also in Vermont. It is said that nearly all of the American courts, including the Supreme Court of the United States, have followed the rule. Our own court has decided that it was fair to a witness to a reasonable extent to inform him that it is the purpose at the time of his examination, when such is the purpose, to impeach his testimony, and to give him ample warning.

We will have to adhere to that rule in this case. If it must be modified, it will have to be done hereafter. We must say that we do think that there is ground for much modification, for a witness should not be taken by surprise.

Having arrived at the conclusion before expressed on this point, we will have to reverse the judgment and the verdict of the district court.

We will state the main facts relating to this point:

"Q. What did he have in his left hand [relating to deceased]?
"A. He didn't have anything in his left hand.
"Q. You didn't tell me that he had a cigarette in his hand.
"A. I don't remember."

On redirect examination:

"Q. You were summoned by the state?
"A. Yes, sir.
"Q. You were examined in the district attorney's office?
"A. Yes, sir.
"Q. You testified in the lower court?"

The evidence does not show that the witness had been questioned, nor the time, place, and circumstances regarding the witness' statement previous to the trial. The bill of exception shows that the contradiction was material. It contains statement showing materiality of evidence offered to contradict as material.

It is therefore ordered, adjudged, and decreed that the judgment and verdict appealed from are avoided, annulled, and reversed. It is further ordered, adjudged, and decreed that this case be remanded to the district court to be proceeded with according to law.