ST. PAUL, J.
 

 The accused was tried for murder and convicted of manslaughter. His appeal presents two bills of exception; one as to the overruling of his motion in arrest of judgment, and the other as to the admission of certain evidence over his objection.
 

 I.
 

 The motion in arrest of judgment was made upon the ground that the verdict is not responsive to the indictment, in that it does not find
 
 the defendant
 
 guilty; said verdict reading, “We, all the jurors, find guilted [guilty] of manslaughter.”
 

 The motion is without merit. In State v. Florez, 5 La. Ann. 429, this court said:
 

 • “It is lastly urged that the verdict is not responsive to indictment.
 
 Raymond Florez
 
 was indicted and tried; it is said
 
 Raymond Flory
 
 is found guilty by the verdict. * * * A name so badly spelled as to change the sound may affect the indictment; but no authority has been furnished tis to show that
 
 had spelling
 
 vitiates a verdict. The accused was tried by his true name, to which he had plead. A verdict of guilty was written on the back of the indictment. The law presumes that it was the person tried who was found guilty, and not a person not tried, or a fictitious person. The name in the verdict may be rejected as surplusage.
 
 It is no material part of the finding.”
 
 (Italics ours.)
 

 In State v. Howard, 34 La. Ann. 369, the court said:
 

 “It is settled that it is not essential to embody in the verdict the name of the accused. * * *»
 

 In State v. Chambers, 45 La Ann. 36, 11 So. 944, it was held that, where three parties had been indicted for a murder, but only two of them had been arrested and tried, a verdict of
 
 guilty
 
 necessarily had reference only to the two who were on trial and could not have reference to any other party, and hence need not refer to them
 
 specifically,
 
 as the parties to be affected by it.
 

 In State v. Tolliver, 47 La. Ann. 1099, 17 So. 502, this court said;
 

 “Willis Tolliver was the only one on trial, and there could be no possible mistake as to whom the verdict referred.”
 

 In the ease before us Allen Green was the only one on trial, and there could be no possible mistake as to whom the verdict referred to.
 

 The words “We, all the jurors, find,” are mere surplusage, and may be disregarded; the words “guilted [guilty] of manslaughter” would have sufficed. And
 
 had spelling
 
 will not vitiate a verdict.
 

 . II.
 

 The bill reserved to the admission of certain testimony is more serious; it involves the constitutional right of an accused “to be confronted with the witnesses against him.” Const. 1921, art. 1, § 9, p. 2. It was taken to the overruling of an objection to the admission of a certificate of the
 
 registry of the death
 
 of the person alleged to have been killed, for the purpose of showing the death; said certificate having been issued in pursuance of section 4 of Act 60 of 1914, p. 152, reading as follows:
 

 
 *623
 
 “It shall be the duty of any registrar, or other person in charge of vital statistic records, to furnish any applicant a certified copy of the record of any birth or death registered in the records under his charge or control under the provisions of the Sanitary Code and of this act. * * Ss Any such copy, * * * shall be prima facie evidence of the facts therein recited. * * * ”
 

 The state contends that—
 

 “A record or document kept or prepared by a person whose public duty it is to record truly the facts stated therein, is, when relevant, admissible [even against one accused of crime] as prima facie evidence of these facts,” quoting 16 Corpus Juris, p. 739, § 1520.
 

 But the above must be read in connection with the following:
 

 “The constitutional guaranty to persons accused of crime, that they shall be confronted with the witnesses against them, is not applicable to the proof of facts in their nature essentially and purely documentary, and which can be proved only by the original, or by a copy officially authenticated in some way. * * * [But] where a document or record relates to facts which are not such as can be proved only by an original or a certified copy, but may be established by oral testimony, * * * the constitutional guaranty applies.” 16 Corpus Juris, p. 837, § 2113.
 

 And:
 

 “On indictment for homicide, [even] the verdict of the coroner’s jury is ordinarily held inadmissible for any purpose; but in Louisiana the process verbal of the coroner’s inquest is admissible in evidence on the trial for homicide to show the death and the [physical] cause thereof, [only]. * * *” 30 Corp. Jur. 284, § 527.
 

 This variation in our jurisprudence originated in State v. Parker, 7 La. Ann. 83 (1852), and has been adhered to ever since; but we are unwilling to extend the doctrine to other documentary evidence of facts which' are not such as can be proved only by such document itself or a certified copy thereof, but may be established by oral testimony.
 

 Hence, in State v. Wilson, 141 La. 404, 75 So. 95, Ann. Cas. 1918D, 789 (overruling State v. Donato, 127 La. 393, 53 So. 662), we held that a statute (Act 40 of 1908) which attempted to authorize the admission in evidence of an ex parte certificate of the United States internal revenue collector in a criminal' prosecution and make it prima facie proof of retailing liquor in violation of law (i. e., without a license from the local authorities), violated the constitutional guaranty above mentioned. And we adhere to the purport and spirit of that ruling.
 

 The ruling in State v. Dudenhefer, 122 La. 288, 47 So. 614, stands on an entirely different footing. That was the ease of a state tax collector, who had
 
 voluntarily accepted the office
 
 and undertaken the duties thereof, under a statute which
 
 expressly provided
 
 (in substance) that should such tax collector withhold a settlement more than 20 days after the time fixed by law, and fail to pay on demand the sum due the state
 
 as established by a certified copy of his account
 
 from the state auditor, he would
 
 thereupon
 
 be guilty of an embezzlement, and such certificate would then be sufficient for an indictment and competent evidence against him at the trial. Act 170 of 1898, § 79, p. 380. And since
 
 the essence of the crime
 
 in such case consisted in the failure to pay on demand the amount
 
 fixed by the auditor’s certificate,
 
 it is clear that the proo.f of the corpus delicti required that such a certificate be shown; and the certificate itself was therefore the best (and the only) evidence that it issued, even independently of the statute. That case has therefore no application here.
 

 III.
 

 The trial judge says (in effect) 'in his per curiam that even if the certificate was improperly admitted in evidence, nevertheless the accused suffered no-injury because “the defense in this case was self-defense, which admitted the shooting.”
 

 Even if this were so, admitting
 
 the shooting
 
 would not necessarily be admitting
 
 the
 
 
 *625
 

 death;
 
 for the one shot might have recovered, and in order to prove a homicide there must he
 
 proof of a death.
 

 But the plea of self-defense does,
 
 not
 
 admit the killing or that
 
 the accused did the killing.
 

 Thus, in State v. Conda, 156 La. 679, 101 So. 19, this court said:
 

 “The record shows that during a difficulty which arose between defendant and one Rube Newton, and while they were firing at each other with pistols, Thornton, a bystander, was killed.
 

 “The trial judge * * * charged the jury that where the defendant set up a plea of self-defense it was an admission of the killing.
 

 “The charge was error. It is not true [even] as an abstract principle of law that a plea of self-defense, in a prosecution for murder or manslaughter, is an admission that the defendant did the killing. * * * ”
 

 Decree.
 

 The verdict and sentence herein are therefore set aside, and it is now ordered 'that the accused be granted a new trial.