(131 So. 575)

## STATE v. HAYDEN.
### No. 30899.

Nov. 3, 1930.

Rehearing Denied Dec. 1, 1930.

William W. McDonald, of Shreveport, for appellant.

Percy Saint, Atty. Gen., David I. Garrett, Dist. Atty., of Monroe, and E. R. Schowalter, Asst. to Atty. Gen., for the State.

THOMPSON, J.

The defendant was tried for the murder of his wife. The jury found him guilty without capital punishment. His appeal is based on errors alleged to have been committed on the trial and in the proceedings had in the court below, which are embodied in five bills of exception.

Three of these bills, 1, 3, and 4, are co-related, involving the same subject-matter, and will be considered together.

Bill No. 1 was reserved to the admission in evidence of the procès verbal of the coroner's inquest. The objections made by the accused were that article 35 of the Code of Criminal Procedure violates section 9 of the Bill of Rights of the Constitution of 1921, and that the procès verbal was filed more than 5 days after the holding of the inquest.

Bill No. 3 was reserved to that part of the judge's charge which was as follows:

"I charge you that upon the trial of the case the procès verbal of the coroner's inquest shall be competent evidence of death and the cause therefor, but not of any other fact. This procès verbal is restricted to showing death and the cause of death. The facts of the cause of death, in themselves, are not evidence of guilt or innocence and have no direct tendency to implicate accused or any one else."

The particular objection to the charge was that it constituted a comment on the facts.

The fourth bill was reserved to the overruling of a plea of unconstitutionality of article 35 of the Code of Criminal Procedure.

That article, among other things, provides that the procès verbal of the inquest shall be competent evidence of death and the cause therefor, but not of any other fact.

Section 9 of the Bill of Rights, which it is claimed article 35 of the Code contravenes, provides, among other things, that the accused in every instance shall have the right to be confronted with the witnesses against him.

The record shows that the procès verbal was offered by the state for the sole and only purpose of proving death and the cause of death, and it was admitted by the court to go to the jury for that purpose only.

The admission of the procès verbal of a coroner's inquest in a prosecution for homicide for the restricted purpose of proving death and the cause of death has been the subject of adjudications of this court, extending back as far as the early part of 1852.

In the earliest case, State v. Parker, 7 La. Ann. 83, it was held that the procès verbal was admissible for the purposes stated. The court said:

"The inquest is, therefore, a very solemn public proceeding, prescribed by law, principally for two objects: 1st, To ascertain the physical facts as to the death of the deceased. 2nd, To institute a public prosecution against the supposed perpetrator of the deed. * * *

"That part of the inquest which ascertains the death of a person and its precise causes, establishes mere physical facts, which are to be ascertained, according to law, for public purposes."

The procès verbal in that case contained the expression of opinion that the accused fired the pistol which caused the death, and the court held that that part should not have gone to the jury, but the court refused to reverse the case on that ground because the lower court cautioned the jury that no part of the inquest should have any influence upon their minds except that which established the death.

In the case of State v. Taylor, Man. Unrep. Cas. page 366, it was again held that the inquest was admissible to prove the death, but the court granted a new trial because the inquest contained an expression that the death was caused by the accused, and the court below failed to charge the jury that no part of the inquest should be considered, save that which establishes the death.

That decision was rendered in 1879.

Again in State v. Duffy, 39 La. Ann. 419, 2 So. 184, the court held that the procès verbal of the coroner's inquest is admissible for the restricted purpose of showing the fact and cause of death.

To the same effect was the ruling in State v. Baptiste, 108 La. 234, 32 So. 371.

Again in State v. Meyers, 120 La. 131, 44 So. 1008, the court held that the procès verbal of the coroner's inquest was admissible to prove the fact and cause of death only, the court remarking that the proposition no longer admits of reasonable denial. See, also, State v. Johnson et al., 10 La. Ann. 456.

In the case of State v. Joiner, 161 La. 518, 109 So. 51, it was held by the present court in a unanimous opinion that the procès verbal of the coroner's inquest was admissible to show the death of the deceased, and the date and cause thereof, citing State v. Parker, State v. Johnson, State v. Duffy, and State v. Baptiste herein referred to supra.

The case of State v. Green, 161 La. 620, 109 So. 143, which was decided on the same day that the opinion in the Joiner Case was handed down, involved the question of the admissibility of a certificate of the registry of the death of the person killed for the purpose of showing the death, said certificate being authorized by Act No. 60 of 1914. The court held that such certificate was not admissible, in view of the constitutional right of accused to be confronted with the witnesses against him.

But in that case the court recognized the uniform and consistent jurisprudence dating from the Parker Case, to the effect that the procès verbal of a coroner's inquest was admissible to prove death and the cause of death in a prosecution for homicide.

The court did not overrule the jurisprudence so holding, and we take it that the court did not intend to do so.

On the contrary, the court stated that it was unwilling to extend the doctrine of that jurisprudence to other documentary evidence of facts which are not such as can be proved only by such document itself, but may be established by oral testimony.

In a later case, the court, by a unanimous opinion, held that in a prosecution for murder the procès verbal of the coroner's inquest was admissible to prove the fact and cause of death. State v. Davis, 162 La. 500, 110 So. 733.

In adopting article 35 of the Code of Criminal Procedure, the Legislature only put in statute form what had been the established rule of jurisprudence. It is said in the brief of the learned counsel for defendant that in none of the cases was the question of the constitutionality of the statute permitting the introduction of the procès verbal for the restricted purpose made the subject of attack.

Of course the constitutionality of article 35 of the Code of Criminal Procedure was not raised in any of the cases, because that article was not in existence at the time of those decisions.

But if counsel means to say that the constitutional right of the accused to be confronted with the witnesses against him was not argued in any of the cases against the admissibility of the procès verbal of the inquest, then we say that counsel is in error.

We have examined the original record in the Taylor Case, supra, and that record shows that counsel for Taylor made the specific objection to the introduction of the procès verbal that it was in violation of the consti-

tutional right of the accused to be confronted with the witnesses against him, and this specific objection was argued in brief of counsel filed in this court.

And the matter was referred to by the court on page 367 of the report in Manning's Unreported Cases, in which the court approved the ruling of the lower court in admitting the procès verbal to prove only the corpus delicti.

In the earlier case of State v. Parker, which was approved in the Taylor Case it was said:

"That part of the inquest which ascertains the death of a person and its precise causes, establishes mere physical facts, which are to be ascertained, according to law, for public purposes.

"A record of those facts made at the time, and upon inspection by a public officer and intelligent men, aided by professional skill, is better and more precise evidence of those facts, than proof from the fleeting recollections of men, or the hasty and heedless observation of passers by. * * *

"The facts, in themselves, are evidence of neither guilt nor innocence, and have no direct tendency to implicate the accused, nor any one else. There can be no evil resulting from the admission of the record of those facts in evidence, as it can be controverted by the accused, if material to his defense. * * * There can be, therefore, no reasonable objection to this mode of ascertaining the physical facts, which caused the death, before the petty jury. * * *

"Our Constitution, however, provides that a person accused of a crime, shall have the right of meeting the witnesses face to face.

"Therefore, that part of the coroner's inquest, which tends to trace the death to a person accused of the deed, is not evidence

on the trial, because it tends to show guilt in him, to the exclusion of others; and, therefore, he has the constitutional right of meeting the witnesses face to face."

■ It will thus be seen that the constitutional guaranty referred to was considered in the two cases referred to, and the ruling in both cases is very clear that to prove the corpus delicti, which must be established in every prosecution and which does not pertain to the guilt or innocence of the particular accused, the procès verbal of the inquest is admissible. But such parts of the procès verbal as tend to fasten the guilt upon the accused on trial is not admissible, since it would be in violation of the right of the accused to be confronted with the witnesses against him.

■■ There is no law to be found anywhere which declares that the corpus delicti cannot be proved otherwise than by oral testimony from the lips of witnesses, and it would be a strange doctrine to hold that the introduction of documentary evidence to prove the corpus delicti was a violation of the constitutional right of an accused to be confronted with the witnesses against him. The procès verbal, or, for that matter, any other documentary evidence, can in no sense be said to be a witness within the meaning of the constitutional article referred to.

In view of the long line of uniform jurisprudence holding that the procès verbal of a coroner's inquest is admissible to prove the corpus delicti, the mere physical facts of the death and cause of the death, which do not pertain to the guilt or innocence of the accused, we find no sound reason for overruling that jurisprudence and of holding under the constitutional provision the corpus delicti, the fact and cause of death, cannot

be proved except by witnesses confronting the accused face to face.

In the case of State v. Donato, 127 La. 394, 53 So. 662, the court held that the constitutional right of accused to be confronted with the witnesses against him does not apply to documentary evidence, and the admission in evidence of a certified copy of an official record does not invade the right of accused, though the record is made prima facie evidence of guilt.

That was a prosecution for keeping a grog and tippling shop and selling spirituous liquors without having previously obtained a license, and the certificate introduced was authorized under Act No. 40 of 1908.

It is true that in the Green Case, supra, the court stated that the Donato Case was overruled by State v. Wilson, 141 La. 405, 75 So. 95, Ann. Cas. 1918D, 789.

In the last-mentioned case the Donato Case was overruled in so far as it was in conflict with the views expressed in the Wilson Case. But the court did not hold that the certificate could not be introduced in evidence for any purpose as being violative of the right of the accused to be confronted with the witnesses against him. On the contrary, the court clearly stated that, if the statute merely provided that a certified copy of the record kept in the office of the collector of internal revenue should be admissible in evidence in a prosecution for retailing intoxicating liquor without a license, and that such certified copy of the record would be prima facie evidence of the guilt of the party accused, it would not violate the constitutional guaranty referred to according to the decision rendered in the Donato Case, where it was held that the constitutional provision had application only to witnesses, not to documentary evidence.

On page 410 of the opinion in the Wilson Case (75 So. 95, 97) we find this clear and emphatic expression of the court by Chief Justice O'Niell who was then Associate Justice:

"Undoubtedly the Legislature can provide that a certified copy of a record kept in the office of the internal revenue collector shall be prima facie evidence that any person to whom a license for the sale of intoxicating liquor has issued is engaged in selling such liquor. And such certified copy would be admissible in evidence on the trial of any person bearing the name given in the certified copy, for selling intoxicating liquor in violation of law.

"The introduction of a certified copy of such public record in evidence in a criminal prosecution would not violate article 9 of the Constitution.

"Our objection to the Act No. 40 of 1908 is that it makes an ex parte statement or certificate prima facie evidence of the guilt of a person on trial for violating a criminal statute."

If it be true, as was clearly held, that the Legislature could provide that a certificate or a certified copy of the record kept in the internal revenue collector's office shall be prima facie evidence that any person, to whom a license for the sale of intoxicating liquor has issued, is engaged in selling such liquor, and the introduction in evidence of such document on the trial of any person bearing the name given in the certificate, for selling intoxicating liquor, would not violate article 9 of the Constitution, then we fail to see why the introduction of the procès verbal of inquest for the sole purpose of proving the corpus delicti would be in violation of the guaranty contained in article 9 of the Constitution.

Our conclusion is that the ruling of the lower court in admitting the procès verbal was correct, that it did not violate section 9 of the Bill of Rights and that article 35 of the Code of Criminal Procedure is not unconstitutional.

■ The objection that the procès verbal was made after the time stated in the statute it should have been made has no merit. The delay did not strike the procès verbal with nullity.

■ Nor was the charge of the judge to the jury in referring to the procès verbal improper or a comment on the facts.

The charge was wholly unnecessary because of the restriction in the admission of the procès verbal. There were no facts before the jury evidenced by the document, except the death of the deceased and the cause of the death. It was out of mere precaution that the judge gave the charge and for fear that the jury might give greater weight to the evidence than the facts to which the procès verbal was restricted. State v. Davis, 162 La. 502, 110 So. 733.

■ The second bill was reserved to the refusal of the court to admit in evidence certain letters said to have been written to the accused by his wife while the two were separated. It appears that the young daughter of the deceased, wife of the accused, had testified without objection that on one occasion the defendant had choked his wife and talked mean to her and was generally unkind to her.

It is stated in the bill that the letters expressed her love and devotion to defendant, her willingness to return to him and live with him, and in which letters she blamed herself and her family for their marital troubles.

It was stated that the purpose in offering the letters was to rebut the testimony of the

deceased's daughter wherein she had stated that the accused choked her mother, was mean to her, and was generally unkind to her.

There was no prejudicial error in refusing to admit the letters. They were clearly hearsay evidence, being the mere expression of a sentimental feeling of the wife in anticipation of a reunited connubial relation. The contents of the letters could, under no manner of reasoning, be regarded as a rebuttal of the particular act of choking testified to by the daughter of the writer of the letters, nor of the fact that defendant was mean to his wife or treated her unkindly before the separation. There was, so far as the record shows, no evidence of the cause of the separation, and hence no justification in law or reason for introducing in evidence the ex parte statement of the wife that she and her family were the cause of the separation. The lips of the wife were closed in death, and there was no opportunity of explaining the reason for writing the letters or the circumstances which induced her to write them.

The feelings of affection for the husband said to have been expressed in the letters were not at all inconsistent with the unkindness of the husband toward his wife, nor could the letters be in rebuttal of the act of brutality in choking her. Aside therefore from being hearsay, the contents of the letters were wholly irrelevant and immaterial.

The fifth and last bill was to the overruling of a motion for a new trial.

It is only necessary to consider those grounds of the motion which are not embraced in the bills of exception already discussed.

One of the complaints is that a witness for the state, George Linderman, testified that,

on one occasion just prior to the marriage of defendant to his deceased wife, defendant told the witness that he was going to marry the woman, get her money, give her strychnine, and get rid of her. That defendant was surprised at this testimony, and that, if granted a new trial, he could show that the witness was unworthy of belief, was a man of no morals, and was utterly unreliable.

The district judge heard the evidence produced on this issue of the motion for a new trial and found that it furnished no reason for ordering a new trial. We have read the testimony and fully agree with his conclusion.

The witnesses produced to impeach the witness Linderman were themselves of doubtful credibility as shown by the evidence produced by the state on the trial of the motion.

Another ground of the motion is that R. C. Burlew, one of the jurors, about a month prior to the trial, made the remark to W. J. Peters that defendant should not have a trial, and that he ought to be hanged.

That another juror W. C. McIntosh made the statement in the presence of a Mrs. J. C. Brigham that "that fellow (Hayden) ought to be hanged."

The juror Burlew denied that he made the statement attributed to him, but that he did say that, if the defendant was guilty of the crime, he ought to be hanged.

The juror McIntosh was not present, though a summons had been issued for him.

The witness Mrs. Brigham testified that she heard McIntosh make the remark imputed to him. She admits that she was a member of a Saturday night drinking party at the house of McIntosh, in which all were drinking and talking, including herself, and in the general conversation McIntosh said, "Well, he is guilty and he ought to be hung."

It is admitted that this supposed remark of McIntosh was made known to defendant's counsel before the jury was accepted and sworn and before the defendant had exhausted his peremptory challenges, and counsel for defendant took no action in the matter, because, as he states, he could not locate Mrs. Brigham at the time and did not wish to do McIntosh an injustice. He therefore passed the matter over with the impression that the report was a mistake, or probably a mistake.

The defendant should have acted before he accepted the juror. But, instead, he treated the report as trifling and unimportant, accepted the juror, and submitted his case to the jury of his own selection.·

He was willing to take the chances of an acquittal with McIntosh on the jury and he could not after verdict be permitted to claim a new trial on the ground of the prejudice of a juror he had accepted with the information which had been communicated to him.

■ Another complaint is that the judge failed to charge the jury as to the different penalties that could be given under the various verdicts that could be rendered.

It does not appear that the accused requested the charge.

The judge did charge the jury as to the different verdicts which the jury could render in a prosecution for murder, and that was all that was required of him. The jury had nothing to do with the penalty to be imposed otherwise than to qualify the verdict for murder, by adding, without capital punishment, and this the jury did.

The conviction and sentence are therefore affirmed.

O'NIELL, C. J., and ST. PAUL, J., dissent from the rulings on bills 1, 2, 3, and 4.

### O'NIELL, C. J.

The fundamental error in the prevailing opinion in this case is in the failure to observe the difference between documentary evidence and ex parte or hearsay declarations. Documentary evidence is admissible in a criminal prosecution, when the existence of the document or record is itself relevant to some issue in the case; but ex parte declarations or certificates, even by a public officer, are not admissible when the mere fact that such a declaration was made, or that such a certificate was issued, is not relevant, and when the purpose of offering the document in evidence is to prove the truth of what is stated in it. I tried to make that distinction plain in the explanation I gave, and by the authorities I cited, in the opinion which I wrote, and which was unanimously adopted, in State v. Wilson, 14 La. 404, 75 So. 95, 97, Ann. Cas. 1918D, 789. In that case it was held that Act No. 40 of 1908 violated article 9 of the Constitution, in that the statute undertook to permit the introduction in evidence in a criminal case of an ex parte declaration or certificate of the internal revenue collector that a certain license or permit had been issued to a certain person. It was said that the statute would not be unconstitutional if it declared that a certified copy of a record in the office of the internal revenue collector was admissible as prima facie evidence. The distinction was drawn thus:

"If the statute did provide merely that a certified copy of the record kept in the office of the collector of internal revenue should be admissible in evidence in a prosecution for retailing intoxicating liquor without a license, and that such certified copy of the record would be prima facie evidence of the guilt of the party accused, it would not violate the constitutional guaranty referred to, according to the decision rendered in the case of State

v. Donato, 127 La. 393, 53 So. 662, where it was held that that constitutional provision had application only to witnesses, not to documentary evidence. But a certified copy of the record kept in the office of the collector of internal revenue is not, of itself, sufficient proof to warrant the conviction of a person accused of selling intoxicating liquor in violation of the law.

"At common law an officer who is authorized to certify to the correctness of a copy of a record kept in his office has no authority to furnish, as evidence for the trial of a lawsuit, his interpretation of what the record contains or shows, or to certify to its substance or effect. The ex parte certificate of a public officer, as to what the records kept in his office show, or prove, is not, in the absence of statutory authority, admissible in evidence on the trial of a lawsuit. That is because it is the province, not of a keeper of public records, but of the judge or jury charged with the trial and determination of the case, to interpret documentary evidence and determine its effect. See Wigmore, § 1678, note 1; Jones on Evidence (2d Ed.) p. 684, par. 543; Sykes v. Beck, 12 N. D. 242, 96 N. W. 844; McGuire v. Sayward, 22 Me. 230; State v. Champion, 116 N. C. 987, 21 S. E. 700; Francis v. Mayor, 58 N. J. Law, 522, 33 A. 853; Brill v. Christy, 7 Ariz. 217, 63 P. 757; 17 Cyc. 337. See, also, Gill v. Phillips, 6 Mart. (N. S.) 298; Seghers v. His Creditors, 10 Mart. (O. S.) 54.

"The Act No. 40 of 1908, authorizing the collector of internal revenue to furnish a certificate showing what his records contain or prove, and making such certificate admissible in evidence on the trial of a lawsuit, and making it prima facie proof of a relevant fact, would not violate any provision of the Constitution of this state, and would, perhaps, be valid legislation, if it had reference to civil cases. But the Legislature cannot allow an ex parte certificate from the internal revenue collector, showing that a United States internal revenue license or permit was issued to a person named in the certificate, to be admissible in evidence in a criminal prosecution, and to be prima facie evidence of the guilt of the party accused, without violating the constitutional guaranty that:

" 'The accused in every instance shall have the right to be confronted with the witnesses against him.'

"Undoubtedly the Legislature can provide that *a certified copy of a record* kept in the office of the internal revenue collector shall be prima facie evidence that any person to whom a license for the sale of intoxicating liquor has issued is engaged in selling such liquor. And such *certified copy* would be admissible in evidence on the trial of any person bearing the name given in the *certified copy*, for selling intoxicating liquor in violation of law. The introduction of a *certified copy of such public record* in evidence in a criminal prosecution would not violate article 9 of the Constitution. Our objection to the Act No. 40 of 1908 is that it makes *an ex parte statement or certificate* prima facie evidence of the guilt of a person on trial for violating a criminal statute."

I have italicized the expression "certified copy of a public record" and the term "ex parte statement or certificate" in order to distinguish them. The distinction is this: That a certified copy of a public record is documentary evidence; and the constitutional guaranty that the accused shall have the right in every instance to be confronted by the witnesses against him does not apply to documentary evidence. But an ex parte certificate of a public officer, purporting to state what his records show, or purporting to fur-

nish his knowledge on a particular subject, is not documentary evidence; and to say that such a certificate or declaration is admissible in evidence, in lieu of the testimony of the officer himself, is violative of the constitutional guaranty.

I concede that, before the Code of Criminal Procedure was adopted, this court had decided in several cases that the procès verbal of the coroner's inquest was admissible in evidence in a prosecution for murder or manslaughter to prove the death and the cause of death. But, in the cases where that was held to be the law, the proof of the death and of the cause of the death did not affect the question of guilt or innocence of the party on trial. In many homicide cases the proof of the death and cause of death does not tend to convict the party on trial. For example, where the defense is self-defense, there is generally no dispute about the death or the cause of death. In fact, it is very seldom that there is any dispute about the fact or the cause of the death in a prosecution for murder or manslaughter. And, even in cases where the fact or the cause of the death is disputed, the circumstances of the case may be such that the proof of the death and of the cause of death would not affect seriously the question of guilt or innocence of the party on trial. It was on that theory that the court ruled as it did in State v. Parker, 7 La. Ann. 83; for the court said, in substance, that, if the proof of the death and of the cause of death did tend to prove that the party on trial committed the crime, the procès verbal of the coroner's inquest would not be admissible. I quote from page 85 of the report, viz.:

"Our Constitution, however, provides that a person accused of a crime, shall have the right of meeting the witnesses face to face.

Therefore, that part of the coroner's inquest, which tends to trace the death to a person accused of the deed, is not evidence on the trial, because it tends to show guilt in him, to the exclusion of others; and, therefore, he has the constitutional right of meeting the witnesses face to face. The deposition of the witnesses before the inquest, if taken in writing, should not, therefore, be given in evidence on the trial, *much less should the opinion of the coroner and jury of inquest, given as the foundation of an order of arrest, that the death was caused by the accused.*" (The italics are mine.)

Now, if we follow the philosophy and reason for the decision which I have quoted, we are bound to observe that the procès verbal of the coroner's inquest was not admissible in this case, "because," as the court said in State v. Parker, "it tends to show guilt in him"—the defendant in this case. His defense was that no poison had been administered to his wife—that she had died of acute Bright's disease. It was he who administered medicine to her and attended to her wants during her last illness; and, so, if her death was caused by strychnine poisoning, as stated in the procès verbal of the coroner's inquest, the jury was bound to conclude that the defendant on trial administered the poison. In fact the question of the cause of the death was the only question of fact which the jury had to decide in determining the question of guilt or innocence of the defendant. Under those circumstances, I say that, according to the rulings cited in the prevailing opinion rendered in this case, the procès verbal of the coroner's inquest was not admissible in evidence.

It is not possible to reconcile the ruling in this case with the ruling made in State v. Green, 161 La. 620, 109 So. 143; where it

was held that section 4 of Act No. 60 of 1914, p. 152, which declared that a certificate issued by the registrar of vital statistics should be prima facie evidence of the facts therein recited, was violative of section 9 of article 1 of the Constitution 1921, in so far as it undertook to make such a certificate admissible to prove the fact of the death in a prosecution for murder.

Referring now to bill of exception No. 2, I do not see how it can be said that the affectionate letters which were written by the wife to her husband during their separation, a short time before her death, were "hearsay evidence." The defendant's stepdaughter—daughter of the deceased—testified, as a witness for the state, that the defendant had treated his wife cruelly. The love letters which she wrote to him at that time were offered in evidence to rebut the testimony given by the child. They were not offered or intended to prove the truth of any declaration made in the letters, but merely to prove the fact that the relation between the husband and wife was amicable and affectionate; that is, to prove the fact itself of the wife's manifestations of love and affection for her husband. The rule which forbids the introduction of hearsay evidence is not applicable when the mere fact of the making of the ex parte statement is itself a relevant fact, regardless of the truth of the ex parte statement. The letters were not only admissible in evidence, but they were in fact the best evidence, and were therefore the only admissible evidence, to prove what the letters contained—not to prove the truth of what the letters contained, but to prove the fact itself that such letters were written by the wife to her husband. The letters might not have been deemed sufficient to rebut the testimony of the stepchild of the defendant; but that was a matter for the jury to determine. For

that reason, I respectfully submit that the following expression in the prevailing opinion rendered in this case is out of place, viz.:

"The feelings of affection for the husband, said to have been expressed in the letters, were not at all inconsistent with the unkindness of the husband towards his wife, nor could the letters be in rebuttal of the act of brutality in choking her."

That is the same as to argue—or to lay down as a rule of human conduct—that a woman is as apt to have an affection for a brutal husband as she is to have an affection for a kind husband. I doubt that a jury would believe that. It is not every wife who is so tolerant or considerate as to say to her husband: "I know not, I ask not, if guilt's in thy heart; I but know that I love thee, whatever thou art."