286 So.2d 644 (1973)
STATE of Louisiana
v.
Ronnie GRAY, alias Burns Gray.
No. 53841.
Supreme Court of Louisiana.
December 3, 1973.
*645 L. Michael Ashbrook, Shotwell, Brown & Sperry, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Special Counsel to Atty. Gen., J. Carl Parkerson, Dist. Atty., Charles A. Traylor, II, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The Ouachita Parish Grand Jury indicted the defendant, Ronnie Gray, for manslaughter in connection with the death of Robert R. Shipp. After trial, the jury returned a verdict of guilty, and the trial judge sentenced him to a term of 12 years in the custody of the Louisiana Department of Corrections. He has appealed, relying upon three bills of exceptions reserved in the trial court.
In the early morning of September 11, 1971, Robert R. Shipp, accompanied by Billie Bonner, his fiancee, was driving his automobile north on U. S. Highway 165 toward the City of Monroe. His automobile malfunctioned and came to a stop partially blocking the highway. Another vehicle traveling south, occupied by Ronnie Gray and several companions, nearly collided with the disabled vehicle and ran off the highway. An altercation between the occupants of the two vehicles followed, during which Shipp was killed by a passing automobile, driven by Reverend James L. Johnson. The State's theory of the case was that the defendant Gray either threw the victim in front of the automobile or the automobile struck the victim as the defendant was engaged in committing an assault and battery upon the victim and Billie Bonner.
The three bills of exceptions relate to the admission in evidence of photographs showing bruises on Miss Bonner's body; the exclusion from evidence of a traffic accident report prepared by the State Police; and the overruling by the trial judge of a pre-trial motion to require the State to disclose and produce investigative statements made by the State's witnesses.

BILL OF EXCEPTIONS NO. 1:

Admission of Photographs
Defendant reserved Bill of Exceptions No. 1 to the overruling of his objection to the admission of photographs of Miss Bonner, the victim's companion, showing bruises on her face, arms and legs. Defendant asserts that the photographs were irrelevant and immaterial.
As disclosed in the Bill of Particulars, the State based the prosecution partially on LSA-R.S. 14:31(2) (a), an unintentional death resulting from the perpetration of an intentional misdemeanor. Consistent with this theory, Miss Bonner testified that she and the deceased were beaten by the defendant. The photographs corroborated her testimony. Hence, they were relevant. See State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971).
We have examined the photographs and find them neither gruesome nor repulsive; they merely show bruises and discolorations. In any event, their probative value is such as to warrant their admission in evidence. See State v. Hall, 256 La. 336, 236 So.2d 489 (1970); State v. Hamilton, 249 La. 392, 187 So.2d 417 (1966); State v. Morris, 245 La. 475, 157 So.2d 728 (1963).
We conclude that the bill of exceptions lacks merit.

BILL OF EXCEPTIONS NO. 2:

Exclusion of State Police Accident Report
During defense counsel's examination of State Police Officer James C. York, he offered in evidence a certified copy of the traffic accident report, at least partially prepared by Officer York. The report was offered for the purpose of impeaching the testimony of Reverend Johnson, the driver of the automobile that struck the deceased, by showing a prior inconsistent *646 statement. The trial judge sustained the State's objection to the admission of the report and defense counsel reserved a bill of exceptions.
LSA-R.S. 15:493 provides:
"Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible."
The foundation required by the statute is a prerequisite for the introduction of documentary evidence of a prior inconsistent statement. State v. Simon, 131 La. 520, 59 So. 975 (1912); State v. Fletcher, 127 La. 602, 53 So. 877 (1910); State v. Meyers, 120 La. 127, 44 So. 1008 (1907).
The Bill of Exceptions and attached excerpt from the trial record contain no foundation showing the interrogation of Reverend Johnson in accordance with the statute. Hence, the ruling of the trial judge was correct.
We note, moreover, that the trial judge did allow Officer York to testify as to the content of Reverend Johnson's prior statement made to him during the investigation. It follows, therefore, that even if the trial judge erred in excluding the police report, it was harmless error. See LSA-C.Cr.P. Art. 921.

BILL OF EXCEPTIONS NO. 3:

Pre-trial Motion for Disclosure and Production of Evidence Favorable to Defendant
Prior to trial, defense counsel filed a motion entitled "Motion to Compel Disclosure and Production of all Evidence Favorable to Defendant." In the motion, defense counsel sought to have the court order the State to produce for inspection and copying all evidence in the possession of the State favorable to the defendant, including but not limited to the following:
"The statements, memorandums or summaries of statements, stenographic recording or transcription of oral statements referred to in the oath in support of a search warrant signed by Carl Gregory and Laymon Godwin on September 17, 1971, and filed of record in Ouachita Parish, Louisiana, on the same day."[1]
At the hearing on the motion, the defendant argued that the State had written statements from several witnesses that the victim ran into the highway in front of the passing automobile at a time when "the defendant was with Billie Bonner and could not have pushed, chased or caused the decedent to enter the highway." He contended that he was entitled to the production of these statements prior to trial, citing Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963).
The State took the position that the defendant was not entitled to the pre-trial discovery of the State's evidence, but added:
"The State is not attempting in this case to suppress any evidence that would be favorable to the defendant. Now I have no objection whatsoever to the Court, an *647 impartial party, taking these statements and reading them and, if the Court finds them favorable to the defendant, letting him know what is in them but I respectfully contend that the statements do not contain anything that will relieve the defendant of the charge against him."
The trial judge declined to examine the statements, as suggested by the District Attorney. After pointing out to defense counsel that a prior statement, if contradictory, could be used for impeachment of a witness at the trial, the judge overruled the motion.
It is well established that a defendant is not entitled to the pre-trial discovery of the written statements of prosecution witnesses in the District Attorney's files. State v. Martin, 250 La. 705, 198 So.2d 897 (1967); State v. Hunter, 250 La. 295, 195 So.2d 273 (1967); State v. Johnson, 249 La. 950, 192 So.2d 135 (1966); State v. Vallery, 214 La. 495, 38 So.2d 148 (1948).[2]
It follows that unless there is an overriding constitutional principle that required the pre-trial production of the statements in the present case, the ruling of the trial judge was correct.
In Brady v. Maryland, supra, the petitioner brought a postconviction proceeding to set aside his conviction of murder and death sentence. At his original trial, he had admitted he was an accomplice. He sought, however, to show that his companion had actually killed the victim, as a basis for a jury verdict "without capital punishment." Defense counsel requested from the State's attorney the companion's confession to establish this. The State delivered all of the companion's statements except one, in which the companion admitted the actual homicide. The prosecution withheld this statement.
The United States Supreme Court, considering the statement admissible only on the issue of punishment, granted a new trial as to punishment only.
The Court stated:
"In Pyle v. Kansas, 317 U.S. 213, 215, 216, 63 S.Ct. 177, 87 L.Ed. 214, 216, we phrased the rule in broader terms:
"`Petitioner's papers are inexpertly drawn, but they do set forth allegations that his imprisonment resulted from perjured testimony, knowingly used by the State authorities to obtain his conviction, and from the deliberate suppression by those same authorities of evidence favorable to him. These allegations sufficiently charge a deprivation of rights guaranteed by the Federal Constitution, and, if proven, would entitle petitioner to release from his present custody. Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791.'
"The Third Circuit in the Baldi Case construed that statement in Pyle v. Kansas to mean that the `suppression of evidence favorable' to the accused was itself sufficient to amount to a denial of due process. 195 F.2d 815 at 820. In Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217, 1221, we extended the test formulated in Mooney v. Holohan when we said: `The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.' And see Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9; Wilde v. Wyoming, 362 U.S. 607, 80 S.Ct. 900, 4 L.Ed.2d 985. Cf. Durley v. Mayo, 351 U.S. 277, 285, 76 S.Ct. 806, 100 L.Ed. 1178, 1185, (dissenting opinion).
"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."
*648 Significant in that case, we think, is the suppression of the confession after request, its favorable content for the defense, and its materiality to the issue of punishment to be fixed by the jury in the capital case. Thus, the withholding of the confession rose to a constitutional dimension.
In Moore v. Illinois, 408 U.S. 786, 92 S. Ct. 2562, 33 L.Ed.2d 706 (1972), the United States Supreme Court stated:
"The heart of the holding in Brady, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment."
In the light of these two decisions, upon the stipulation of the State and defense, we have examined the statements in controversy. The statements are not in narrative form. Rather, they are in the form of a transcript of the police interrogation of the witnesses during the investigation. Although some of the witnesses were most reluctant to give information, we find that none of them stated that the victim ran into the highway and was killed by the automobile without participation by the defendant.
Since the complete trial transcript is not included in the appellate record, we cannot of course determine whether or not the statements are entirely consistent with the trial testimony of the witnesses. It is well settled, however, that a prior inconsistent statement is not admissible on the substantive issue of guilt. State v. Ray, 259 La. 105, 249 So.2d 540 (1971) and the authorities therein cited. Unlike the prosecution in Brady v. Maryland, a capital case, the statements here are immaterial to the punishment, for the jury had no responsibility to assess punishment.
A prior written statement is admissible to impeach the credibility of a witness only if it is inconsistent with his trial testimony and then only if the witness denies the prior statement. LSA-R.S. 15:493; State v. Jackson, 248 La. 919, 183 So.2d 305 (1966).
In his Per Curiam, the trial judge describes the course of the evidence as follows:
"During the trial, while testifying as state's witnesses, the two deputies were questioned at length on cross examination. They revealed that the affidavit for the search warrant did not purport to contain all information known or reported to the officers, nor even the entire contents of the five statements referred to therein. The officers stated they merely tried to summarize the substance of their information as to certain facts in order to provide `probable cause' for the particular search they desired at that point in the investigation."
"During the trial, the defense was emphasizing two basic factual points revealed in the affidavit for the search warrantthe fact that the deceased had run out in the road to escape one combatant, and that at this moment, defendant herein was fighting with Mrs. Bonner. Thus, defendant was arguing that if (as claimed in the search warrant affidavit) the state had statements from witnesses establishing those facts, he should have been allowed to have such statements pre-trial in order to impeach witnesses who changed their stories during trial testimony. However, all witnesses were cross-examined about such facts; and the jury was made fully aware that all witnesses had previously given statements not wholly in accord with their trial testimony. Several such witnesses admitted prior inconsistent (or at least incomplete or somewhat different) statements and gave explanations therefor."
In Moore v. Illinois, supra, the United States Supreme Court stated:
"We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the *649 defense of all police investigatory work on a case."
To hold that the statements here had to be delivered to the defendant before trial would require, as a matter of constitutional right, full unilateral pre-trial discovery in favor of the defendant of the State's investigative files. We are unable to construe the Due Process Clause so broadly. See State v. Bailey, 261 La. 831, 261 So.2d 583 (1972); State v. Gladden, 260 La. 735, 257 So.2d 388 (1972).[3]
We conclude that Bill of Exceptions No. 3 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM and DIXON, JJ., concur.
NOTES
[1] The affidavit read as follows: "The reason for and facts in support of the issuance of the search warrant are: Five individuals have given recorded statements to the effect that on September 11, 1971, Ronnie Gray, alias Burns Gray, and Johnny Lee Williams were fighting with Robert R. Shipp and Robert R. Shipp was knocked to the ground. Later Shipp was still struggling with Johnny Lee Williams and Ronnie Gray was hitting Robert Shipp's girl friend, Billie Bonner, and Robert Shipp tried to get to her to assist her and was struck by a passing automobile and killed ..."
[2] The court is, of course, aware that the Louisiana State Law Institute, the official state law revision agency, is considering a comprehensive, two-way discovery statute for criminal cases.
[3] The Court's recent decision in State v. Woodruff, La., 281 So.2d 95 (1973) is not relied upon by the defendant. Nonetheless, we note that its factual and procedural context clearly distinguish it from the present case.