### No. 10,435.

### THE STATE OF LOUISIANA vs. MINNIE MACK.

1.  The police or recorders' court of the City of New Orleans are vested with jurisdiction "to try, sentence and punish all persons who violate any legal or valid city ordinance." Act 20 of 1882, sec. 49.
2.  Section 8 of the same act delegates to the city the power to exclude houses of prostitution and assignation from certain limits and to close the same and to authorize the Mayor to close them.
3.  To require the occupants or keepers of such houses to remove from the same is a proper and practical method of *closing* such houses, and the imposition of fine and imprisonment for refusing to remove is a competent sanction of such requirement.
4.  The fact that the keeper of an assignation house is the owner of the same does not exempt her from obedience to such ordinances, which are an exercise of the police power subject to which all rights of property are held.
5.  The ordinance does not deprive defendant of her property, but only prevents her from using it in a manner inconsistent with public order and morals.
6.  Even this qualified deprivation is not operated without "due process of law;" since the penalties are enforced by a competent tribunal after contradictory hearing and on proof that defendant was making the prohibited use of her property and had disobeyed the order to remove.
7.  In this class of cases evidence of the common reputation of the house and its keeper is admissible.
8.  Under Act 29 of 1886, conviction of infamous crime is no longer a disqualification of a witness in criminal cases.

APPEAL from the First Recorder's Court of the City of New Orleans. *Murphy*, J.

*T. McC. Hyman*, Assistant City Attorney, for Plaintiff and Appellee.

*P. C. Lassalle* for Defendant and Appellant.

The opinion of the Court was delivered by

FENNER, J.   Defendant was prosecuted for violation of the following municipal ordinance :

"*Be it ordained,* That wherever a house of prostitution or of assignation may become dangerous to public morals, either from the manner in which it is conducted or the character of the neighborhood in which it is situated, the Mayor may, on such facts coming to his knowledge, order the occupants of such house, building or room to remove therefrom within a delay of five days, by service of notice on such occupants, in person, or by posting the notice on the door of such house, building or room, to remove therefrom within a delay of five days, and upon such occupants failing so to do, each shall be fined in the sum of twenty-five dollars, and in case of failure or refusal to pay said fine, each occupant shall be imprisoned for a time not exceeding thirty days.

"*Be it further ordained,* That in the event that the occupants of said house, building or room do not remove therefrom, after infliction of the penalty, the Mayor is authorized to give a notice to such occupants to remove therefrom within twelve hours, and upon said occupants failing so to do, each shall be fined in the sum of twenty-five dollars, and in case of failure or refusal to pay said fine, each occupant shall be imprisoned for a time not exceeding thirty days. "

The defendant filed in the court below two exceptions, one to the jurisdiction of the court, the other arraigning the legality and constitutionality of the ordinance.

1. The exception to the jurisdiction has no merit.   Article 136 of the Constitution authorizes the General Assembly to provide for police or magistrates' courts and to vest them with jurisdiction for "the enforcement of municipal ordinances. "   The charter of the city, Act 20 of 1882 creates such magistrates and expressly confers upon them jurisdiction "to enforce all city ordinances and to try, sentence and punish all persons who violate any legal or valid city ordinance."   Sec. 49.

2. In considering the question of the legality and constitutionality of the ordinance, we confine ourselves to the grounds presented in the lower court.   The exception is to the effect that the ordinance and the notice by the Mayor provided therein violate Article 6 of the Constitution, which declares that no person "shall be deprived of life, liberty or property without due process of law."   She complains that she is owner of the house occupied by her, and that in being compelled to remove

therefrom on order of the Mayor, or, in case of disobedience, to be fined or imprisoned for failure to remove, she suffers a deprivation of her property in violation of the article.

In considering the question of the validity of the ordinance we are bound to give it a reasonable construction, and, in case of ambiguity, to give that construction which consists with the Constitution and the law. Dillon Mun. Corp., sections 413, 420.

The ordinance deals exclusively with occupants of " houses of prostitution or of assignation ; " it authorizes the Mayor to give notice only to occupants of *such* houses, and the penalties are inflicted only on such occupants. It is not to be construed as authorizing fines or imprisonment simply for disobeying an order of the Mayor. Those penalties could only be imposed on proof of three facts :

1. That the defendant was occupying " a house of prostitution or assignation ; "

2. The o. der of the Mayor.

3. The disobedience thereto.

Accordingly the affidavit in this case charges defendant with " failing to remove from said No. 55 First street *occupied by her as an assignation house;* " and the transcript abundantly shows that the defendant was heard and the court tried and determined the question of fact as to whether or not the defendant occupied and kept her house as an assignation house.

So construed and enforced, and confining ourselves exclusively to the first section of the ordinance which is the only one involved, the question is, whether the enforcement thereof operates a deprivation of property " without due process of law."

We think not. The charter of the city expressly delegates the power to " regulate houses of prostitution and assignation " and " to exclude such houses from certain limits " and " to close the same," and " to authorize the Mayor to close such places." Act 20 of 1882, sec. 8, par. 11.

The ordinance is passed in the exercise of this power.

To require prostitutes and keepers of assignation houses to remove from houses situated in localities where they are forbidden, is a proper, and the only practical, method of " closing " such houses and of " excluding " them from such limits ; and the power granted to the corporation to " close " and to " exclude " houses of prostitution and of assignation, includes and implies the power to adopt the proper means to accomplish this end. Dillon Mun. Corp., sec. 376.

It is the clearest possible example of a police regulation, the exercise of the police power of the State—that power reserved to every State,

as essential to social order and comfort, which subjects the most absolute rights of property to the condition that they shall be so used as not to infringe the rights of others. Defendant's ownership of the property cannnot avail to protect her in its occupancy, when perverted to a prohibited use of it as a house of assignation.

The ordinance under consideration does not deprive defendant of her property; it simply prevents its use by her for purposes inconsistent with public order and morals.

Even this qualified deprivation is not operated without " due process of law ; " it is enforced by a competent tribunal, only after contradictory hearing and on proof that the offence charged has been committed.

Therefore, the constitutional provisions invoked, is not violated.

3. Complaints is made that the magistrate received evidence of common reputation of the house and of defendant as for the purposes for which the house was used. The bill of exception does not show that this was the only evidence received; and, moreover, there is good authority supporting the admissibility of such evidence in this class of cases. 2 Wharton Cr. L., sec. 2395 (b) ; 1 Dillon Mun. Corp., sec. 376, Note 1.

4. The objection to the competency of a witness, on the ground that he had been convicted and sentenced for grand larceny, has no force since Act 29 of 1886, which provides that " the competent witness in all criminal matters shall be a person of proper understanding," with certain exceptions not germane to this point. This is the first statute passed on this subject in this State. Prior thereto the case was governed by the rules of the English common law as existing in 1805, which excluded convicted and sentenced felons. State vs. Mullen, 33 Ann. 159; State vs. Benoit, 16 Ann. 273.

But since the matter has now been regulated by statute, no disqualifications can be recognized outside thereof.

Judgment affirmed.