LAND, Justice.
 

 These cases were consolidated in this court for argument, with the understanding that a separate judgment should be rendered in each case. Each defendant is charged in a separate indictment with breaking and entering in the daytime, on the 30th day of May, 1940, the dwelling house of Sibi Templet, in the Parish of West Baton Rouge, with intent to steal.
 

 Each of the defendants was tried, convicted and sentenced in a separate trial, and each has taken a-separate appeal to this court.
 

 Three bills of exceptions were reserved by the defendant, Robertson, on the trial of the case.
 

 Bill of Exception No. 1.
 

 In this bill counsel for defendant, Robertson, declares that the State’s attorney, after the .evidence had been submitted by both the State and the defendant, in his closing remarks to the jury, made the following statement:
 

 
 *985
 
 “That there had been other robberies committed in Port Allen and Zachary, and that the Four and 55/100 ($4.55) dollars received by Freddie Bedding as his share of the loot was not half enough.
 

 “That counsel for defendant then and there excepted to said remarks as being highly prejudicial and dehors the record; and reserved a Bill of Exception; that, the District Judge sustained these objections and then and there instructed the jury to disregard any reference by the District Attorney of other crimes alleged to have been committed by the accused, and thereupon the jury retired and rendered a verdict against the defendant of ‘Guilty as charged.’ ”
 

 It is further stated in this bill by counsel for defendant, Robertson:
 

 “And whereupon on a subsequent day of the term, before any judgment was entered on said verdict, the said defendant by his counsel, moved the Court to set aside the verdict of the Jury; and for a new trial of the case for the following reasons:
 

 “That the Attorney for the State in his closing argument made reference to other robberies committed in Port Allen and specifically referred to a robbery in Zachary, Louisiana, in which he accused defendant of being a participant and remarked that Freddie Bedding, witness for the State, did not receive half that was coming to him from these robberies; that counsel for the defendant objected to the aforesaid remarks by the Attorney for the State for the reason that defendant was not being tried for any robbery in Zachary, Louisiana, and said objection was sustained by the Court, and Counsel for defendant reserved a Bill of Exception to the improper remarks of the Attorney for the State.” Tr. No. 36,020, pages 9 and 10.
 

 In the Per Curiam to Bill of Exception No. 1, the trial judge states: “The purported facts in this bill of exception are not correct. There was no objection made at any time by either of Defendant’s attorneys to any remark or statement made by the District Attorney in either his opening or closing argument before the jury. And, as clearly appears from the motion for a new trial in the record, Counsel for Defendant did not allege or base his claim for a new trial on any alleged remark by the District Attorney in his opening or closing argument before the jury.” Tr. No. 36020, pages 10 and' 11.
 

 The motion for new trial appears on pages 5, 6 and 7, Tr. No. 36020. In this motion it is stated: “That defendant’s defense was that of Alibi, in that he was not in the Parish of West Baton Rouge on the 30th day of May, 1940, the date the crime was charged in the indictment to have been committed.”
 

 The sole ground for a new trial set forth in the motion is “newly discovered evidence.” The case presented is one of discrepancy in statement between the trial judge and counsel for defendant, and, under well-settled jurisprudence, we must accept the statement made by the trial judge in his per curiam to the bill reserved. State v. Coleman, 158 La. 755, 104. So. 705;
 
 *987
 
 State v. Alvarez, 182 La. 908, 162 So. 725; State v. Matthews, 189 La. 166, 179 So. 69.
 

 Bill of Exception No. 2.
 

 This bill was reserved by counsel for the defendant, Robertson, and states:
 

 “That upon the trial of the prisoner at the regular term of the Criminal District Court, Parish of West Baton Rouge on the 18th day of September, 1940, that .the State’s Attorney over the objection of the attorney for the defendant, offered and produced evidence of two alleged co-conspirators, who had previously confessed to the same crime with which defendant is charged, said testimony of the alleged co-conspirators being uncorroborated.
 

 “That the only evidence offered by the State to show that the accused was present and participated in the robbery in Port Allen on the 30th day of May, 1940, was the testimony of Freddie Bedding and Herman Washington, both being co-conspirators, and the said Herman Washington having previously been convicted, sentenced, and is now serving said sentence in the State Penitentiary; neither one of the said State witnesses being corroborated by outside independent evidence.
 

 “That counsel for defendant objected to the admission of the uncorroborated evidence of an alleged co-conspirator, who had been previously convicted, sentenced, and is now serving said sentence; and then and there requested and asked the Court to give the Jury the following instructions: ‘That Counsel for defense requested the Court to charge the jury that they should not consider the testimony of an accomplice who had been previously convicted as an accomplice and sentenced, and now serving said sentence in the State Penitentiary unless the accomplice’s evidence had been corroborated by outside and independent testimony by witnesses who were in no way connected with the crime charged.’ But the Court refused to give these instructions to the jury, to which ruling and decision of the Court in refusing to give and read same to the jury, the defendant by his Counsel, then and there, excepted and reserved a Bill of Exception. The Court after hearing the motion of defendant to set aside the verdict of the jury and, grant a new trial, denied same; whereupon defendant through his counsel excepted to said ruling and reserved a Bill of Exception.” Tr. No. 36020, pages 13 and 14.
 

 In the Per Curiam to Bill of Exception No. 2, the trial judge states that:
 

 “The purported facts in this bill of exception are not correct.
 

 “When Herman Washington was on the witness stand, the District Attorney propounded to him the following question: ‘Did you go to the home of Mr. Sibi Templet on May 30th?’ to which Counsel for the Defendant objected as follows: ‘That witness is a co-conspirator with the Defendant and has plead guilty, been sentenced, and now serving his time in the State Penitentiary and is therefore taken out of the category of an ordinary conspirator and his testimony is not admissible against a co-conspirator.’ The Court overruled this objection. The said Herman Washington was a convict, as stated by’
 
 *989
 
 Counsel for Defendant, but he was a person of proper understanding, and in overruling said objection the Court relied on the following authorities: Article 461 of the Code of Criminal Procedure; State v. Asbury, 49 La.Ann. 1741 [23 So. 322]; State v. Mack, 41 La.Ann. 1079 [6 So. 808]; State v. Davis, 154 La. 295 [97 So. 449].
 

 “Counsel for Defendant did not request the Court to give the instructions mentioned in this bill of exception or any other instruction to the jury in connection with the objection mentioned above. However, I might add that in his general charge to the jury the Court fully.charged the jury relative to the testimony of accomplices as follows:
 

 “ ‘An accomplice, Gentlemen, is defined as one who is associated with another in the commission of a crime.
 

 “ ‘An accomplice is a competent witness, either for the State or for the defense, whether he has been convicted or not, or whether he has pleaded guilty, or a “Nolle Prosequi” entered as to him, or whether he be joined in the same indictment with the person or persons on trial or not.
 

 “‘Corroboration is desirable, but not always indispensable; the jury’may convict on his uncorroborated testimony, and while it is not the rule of law, it is rather the rule of our experience, in dealing with that class of testimony, that while you may convict upon the uncorroborated testimony of an accomplice, still you should act upon his testimony with great caution, subject it to a careful examination in the light of the other evidence in the case, and you are not to convict upon such testimony alone, unless satisfied, after a careful examination, of its truth, and also that you can safely rely on it.
 

 “ ‘What the law means by corroboration of the testimony is not merely the corroboration of the accomplice’s narrative and the mere details of how the crime charged was committed, but some real and independent corroboration tending to implicate the defendant in the commission of the offense charged.
 

 “ ‘It is not sufficient to corroborate an accomplice as to the facts of the case generally. He should be corroborated as to some material fact which tends to prove that the accused was connected with the crime charged. The corroboration that merely raises a suspicion of guilt, because the accused had an opportunity to commit the offense, is not sufficient.
 

 “ ‘I charge you that even though a Jury may convict on the uncorroborated testimony of an accomplice the Jury should only do so with great caution. And as to corroboration I want to make it clear that it must bear upon that part of the testimony of the accomplice which connects the Defendant with the crime charged.’ ” Tr. No, 36020, pp. 14, 15 and 16.
 

 The notes taken by the clerk of court during the trial corroborate the statements of the trial judge, contained in the Per Curiam to Bill of Exception No. 2. See statement of clerk. Tr. No. 36020, pp. 11 and 12.
 

 The charge of the able trial judge to the jury, as to the corroboration of the
 
 *991
 
 testimony of an accomplice and as to the care to be exercised by the jury in receiving and weighing such testimony, is correct and is the well-established jurisprudence of this court. But the issue raised by the bill of exception is whether an accomplice, convicted and sentenced to the penitentiary, And who is serving his sentence therein, is .;t competent witness.
 

 In support of his contention that an accomplice is an incompetent witness, after conviction and sentence, defendant cites two decisions of this court, State v. Prudhomme, 25 La.Ann. 522, and State v. Russell, 33 La.Ann. 135. In the Prudhomme case the court said at page 523 of 25 La. Ann.: “It makes no difference whether the accomplice has been convicted or not, or whether he be joined in the same indictment with the prisoner to be tried, or not, provided he be not put upon his trial at the same time. Roscoe 120; 2 Hawk.P.C., c. 46, sec. 90; Stocking v. State, 7 Ind. 326; 1 Greenl., sec. 379; State v. Bayonne, 23 La.Ann. 78.”
 

 “We have already said that the accomplice was a competent witness for the State until he had been convicted and sentenced, if the party against whom the accomplice is offered as a witness be put upon his separate trial. The circumstance of the witness being an accomplice of the party on trial affects his credibility only, of which the jury are to judge.” 25 La.Ann. at page 524.
 

 The above holding is approved in State v. Russell, 33 La.Ann. 135. But in State v. Mack, 41 La.Ann. 1079, at page 1082 of the opinion, 6 So. 808, at page 809, the court held through Mr. Justice Fenner, as its organ:
 

 “The objection to the competency of a witness, on the ground that he had been convicted and sentenced for grand larceny, has no force since Act 29 of 1886, which provides that ‘the competent witness in all criminal matters shall be a person of proper understanding,’ with certain exceptions not germane to this point. This is the first statute passed on this subject in this state. Prior thereto the case was governed by the rules of the English common law as existing in 1805, which excluded convicted and sentenced criminals. State v. Mullen, 33 La.Ann. 159; State v. Benoit, 16 La. Ann. 273.
 

 “But since the matter has now been regulated by statute, no disqualifications can be recognized outside thereof.”
 

 In State v. McManus, 42 La.Ann. 1194, 8 So. 305, the court held that: “Under Act 29 of 1886, conviction of infamous crime is no longer a disqualification of a witness in criminal cases. State v. Mack, 41 La. Ann. 1079, 6 So. 808,” thereby expressly reaffirming the Mack case.
 

 In State v. Asbury et al., 49 La.Ann. 1741, 23 So. 322, it was held by Mr. Chief Justice Nicholls, as the organ of the court, that: “When parties have been jointly indicted for an offense, and only one is put upon trial, the others indicted are, under Act No. 29 of 1886, competent witnesses against the accused on trial; this, whether they have been convicted or have pleaded guilty. State v. Mack, 41 La.Ann. 1079, 6 So. 808; State v. McManus, 42 La.Ann. 1194, 8 So. 305.”
 

 
 *993
 
 In State v. John Reed, 50 La.Ann. 990, 24 So. 131, it was held by Mr. Justice Blanchard, as the organ of the court, that: “The fact that a witness for the state was once himself under suspicion, and even arrest, in connection with the homicide, is no ground for the exclusion of his testimony. Even though an accomplice, he would still be competent as a witness, that fact affecting the credibility, not the admissibility, of his evidence,” citing Act 29 of 1886; State v. Mack, 41 La.Ann. 1079, 6 So. 808; State v. McManus, 42 La.Ann. 1194, 8 So. 305; State v. Asbury et al., 49 La.Ann. 1741, 23 So. 322.”
 

 In State v. Williams et al., 111 La. 179, at page 183 of the opinion, 35 So. 505, at page 507, it is said by the court through Justice Monroe as its organ:
 

 “Under Act No. 29, p. 39, of 1886, which (so far as it need be here quoted) reads, ‘That the competent witness in all criminal matters shall be a person of proper understanding,’ it has been held that persons who have been convicted of infamous crimes, and have served out the sentences imposed therefor, are competent witnesses, provided they meet the requirements of the statute in the matter of understanding. State v. Mack, 41 La.Ann. 1082, 6 So. 808; State v. Mc-Manus, 42 La.Ann. 1194, 8 So. 305.
 

 “In the last-cited of these cases the defendant was being tried for perjury, and, having offered himself as a witness in his own behalf, the objection was made that he had previously been convicted of an infamous crime, and had suffered imprisonment at hard labor therefor, and hence was incompetent. This court, however, quoting from the case first cited, said: ‘The objection to the competency of a witness on the ground that h'e has been convicted and sentenced for grand larceny has no force since Act No. 29 of 1886, which provides that “the competent witness in all criminal matters shall be a person of proper understanding,” with certain exceptions not germane to this point. This is the first statute passed on this subject in this state. Prior thereto the case was governed by the rules of the English common law as existing in 1805, which excluded. convicted and sentenced felons. * * *
 
 But since the matter has been regulated by statute no disqualification can be recognized outside thereof.’ ”
 

 The Legislature of this State was well aware of the interpretation placed by the Supreme Court on Act No. 29 of 1886, providing that “the competent witness in all criminal matters, shall be a person of proper understanding,” etc. Yet when the Louisiana Code of Criminal Procedure was adopted in 1928, in defining the competency of witnesses in any criminal proceeding, the Legislature did not see proper to declare in article 461 of the Code, in the definition of a competent witness in criminal cases, that convicted and sentenced felons should be barred as incompetent witnesses. But, on the contrary, the Legislature again declared that: “The competent witness in any criminal proceeding, in court or before a person having authority to receive evidence, shall be a person of proper understanding, but; First. Private conversations bétween husband and wife shall be privileged. Second. Neither husband nor wife shall be
 
 *995
 
 compelled to be a witness on any trial upon an indictment, complaint or other criminal proceeding, against the other. Third. In the trial of all indictments, complaints and other proceedings against persons charged with the commission of crimes or offenses, a person so charged shall, at his own request, but not otherwise, be deemed a competent witness.”
 

 For the reasons assigned, our conclusion is that convicted and sentenced 'felons are competent witnesses under Article 461 of the Louisiana Code of Criminal Procedure, defining a competent witness in any criminal proceeding to be “a person of proper understanding.”
 

 We therefore find no merit in Bill of Exception No: 2, reserved by the defendant, Robertson.
 

 Bill of Exception No. 3.
 

 This bill was reserved by the defendant, Robertson, to the overruling of a motion for new trial.
 

 In the per curiam to this bill, the trial judge makes the following statement:
 

 “The motion for a new trial speaks for itself and same is based solely on the ground of alleged newly discovered evidence. The defense in this case was alibi which Counsel for Defendant sought to establish by offering witnesses to prove that the Defendant Sam Robertson together with Wilbert (alias James) Coleman, Herman Washington^ and another negro boarded a freight train at Anchorage, La., at about 6:25 P. M. on May 29, 1940, the day before the date of the burglary charged herein and that said train was a through freight bound for Houston, Texas, via De Quincy, La. Among the witnesses presented by Defendant to establish said alibi were three negroes named Alvin O’Connor, Jerry Randell and Isadore Tanner, none of whom were even implicated in this crime or in any other crime. They were witnesses that had no connection with this or any other crime according to the testimony. Alvin O’Connor and Jerry Randell both testified that they accompanied Sam Robertson, Wilbert (alias James) Coleman, Herman Washington and another young negro to Anchorage and saw them take the freight train bound for Plouston, Texas, late in the evening of May 29th, 1940. Herman Washington contended that right after the burglary on May 30th, 1940, he, Defendant Sam Robertson, Wilbert (alias James) Coleman and another negro went to Anchorage to take a. freight train on their journey to California, but the train had already gone. Herman Washington further testified that the persons mentioned again went to Anchorage on the next evening, May 31, 1940, boarded a train bound for Houston, Texas, and that all eventually reached California. Wilbert (alias James) Coleman, a witness for Defendant, and also the Defendant, Sam Robertson, testified that they made the trip to California by way of Houston, Texas, along with Herman Washington and the other negro, but asserted that they left on May 29th, 1940 and went to California to seek employment in the ofange groves. Sam Robertson, Wilbert (alias James) Coleman, and Herman Washington testified that they arrived in California, that they did not work, that the police took one of their par
 
 *997
 
 ty in custody and then released him, and that within a short time they returned to Louisiana.
 

 “Herman Washington and a juvenile, Freddie Beddings, age 14 years old, testified that they, Sam Robertson, Wilbert (alias James) Coleman and another negro committed the crime charged herein and testified to all the details of this burglary. Among the other witnesses for the State were Mr. and Mrs. Sibi Templet, Deputy Sheriffs Mouch and Bourg and Sheriff Dubroca.
 

 “The jury convicted the Defendant and I am absolutely certain that the Defendant had a fair and impartial trial. I feel equally certain that the testimony of Charlie Metevia as set forth in the motion for a new trial would only be cumulative and corroborative evidence and would not bring about a verdict different from that already rendered by the jury in this case.
 

 “As shown by the statement of the Clerk which is annexed hereto and made a part hereof Counsel for the Defendant did not offer any testimony in support of his said motion for a new trial. Said attorneys merely submitted same on affidavit of Charlie Metevia. The most that can be said about the purported facts that the said Charlie Metevia would testify to is that it would be corroborative or cumulative evidence with the testimony of Alvin O’Con-nor, Jerry Randell, witnesses offered by defendant as aforesaid, and the admission made by the District Attorney during the trial that if Mr. Judd were present he would testify that a through freight train bound for Houston left Anchorage at 6:25 P. M. on May 29th, 1940. In view of this situation the Court refused to grant a, new trial herein.
 

 “Annexed hereto is statement and certificate of Clerk of Court.” Tr. No. 36020, pp. 19 and 20; Certificate of Clerk, p. 21.
 

 We find no error in the overruling of the motion for new trial by the judge a quo. The court sentenced the defendant, Samuel Robertson, who is 22 years of age, to be confined in the State Penitentiary for a period of two (2) years and six (6) months and to pay a fine of $1. Tr. No. 36020, p. 22.
 

 The conviction and sentence appealed from by the defendant, Samuel Robertson, are affirmed.
 

 We will now review the three bills of exceptions reserved by defendant, Wilbert (alias James) Coleman, No. 36021 on the docket of this court.
 

 Bill of Exception Nd. 1'.
 

 This bill is a literal reproduction of Bill of Exception No. 1 in State v. Samuel Robertson, No. 36020. The trial judge denies that the district attorney made the statements attributed to him in this bill, in his argument before the jury. In the per curiam to this bill, the following explanation is made:'
 

 “The following is a correct statement of the situation before the Court and Jury. After Herman Washington, a witness for the State, was tendered for cross-examination, Mr. R. F. Walker, one of Defendant’s attorneys, in the presence and hearing of the jury and while interrogating said witness on this case, said to the witness in
 
 *999
 
 words substantially as follows: I am trying to place you, I believe I’ve got you now, you are the one who squealed on Coleman (meaning the defendant) and the other boys in the Zachary burglary matter. In other words, it was Defendant’s own Counsel, as above stated, who brought out on the trial of this case the evidence about the alleged Zachary burglary in which Defendant Coleman, the said witnesses and others are involved in East Baton Rouge Parish. In the present case evidence was introduced by the State to the effect that when the Defendant and his'associates in crime broke and entered the residence of Sibi Templet on the occasion of the burglary charged in the indictment herein they found and broke open a square shaped metal bank and a round glass bank containing money belonging to the child of Mr. and Mrs. Sibi Templet, which said money was then and there taken by Defendant and the other intruders.
 

 “Now, to the actual objection made by Counsel for Defendant.
 
 After the introduction of evidence was completed and with the said evidence brought out by one of Defendant’s attorneys before the jury as stated in the preceding paragraph, the District Attorney began his argument before the jury. And just when the District Attorney, in his argument, mentioned the round glass bank and the burglary at Zachary and before the District Attorney had completed his statement, Counsel for Defendant interrupted him with an objection, which said statement made by the District Attorney
 
 and taken down by the Clerk of Court
 
 is as follows: ‘You heard the evidence Concerning the burglary of the glass bank and you ' have heard the evidence brought out by the Defendant in reference to the admission of the charge of burglary at Zachary. The State cannot offer any evidence of burglaries beyond the case being tried and the Court has instructed you gentlemen of the jury that you are not to consider any other evidence.’ Upon the said objection being made by Counsel for Defendant, the Court then and there instructed the jury to disregard the remarks of the District Attorney with reference to any other burglary than the one charged in the indictment here — not because the remarks were not permissible under the evidence introduced by Defendant’s Counsel as aforesaid and not because the Court considered these remarks of the District Attorney prejudicial under the circumstances —but because Counsel for Defendant had objected to same and had requested the Court to instruct the jury as aforesaid and the Court out of an abundance of caution desired to make absolutely certain that the jury would base its verdict or decision solely on the law and the evidence pertaining to the case of burglary charged in the indictment under which the defendant was being tried.
 

 “The motion for a new trial shows clearly that no reference whatsoever is made therein to any remark made by the District Attorney in his argument to the Jury, and Counsel for Defendant commit another error when they state in this bill of exception that certain purported remarks of the District Attorney in his argument before the jury was one of the grounds contained in said motion for a new trial.
 

 
 *1001
 
 “Reference is hereby made to statement of Clerk of Court annexed hereto.” Tr. No. 36021, pp. 11, 12 and 13.
 

 We find no error in the ruling of the trial judge.
 

 Bill of Exception No. 2.
 

 This bill was reserved by the defendant, Wilbert (alias James) Coleman, is identical with Bill of Exception No. 2, reserved by Samuel Robertson, Tr. No. 36020, relates to the testimony of co-conspirators and, in particular, involves the issue as to whether a co-conspirator, who has been convicted and sentenced, is a competent witness. As these matters have already been fully discussed and disposed of in Bill of Exceptions No. 2, Tr. 36020, State v. Samuel Robertson, we do not deem further comment necessary.
 

 The bill is without merit, for reasons already assigned. Tr. No. 36021, pp. 14-17 inclusive.
 

 Bill of Exception No. 3.
 

 This bill is a repetition of Bill No. 3, reserved by Samuel Robertson, Tr. No.
 
 36020,
 
 and has been taken to the overruling of a motion for a new trial, based solely on the ground of alleged newly discovered evidence to prove .an alibi. Defendant did not offer any testimony in support of his motion for a new trial, but merely submitted same on the affidavit of Charlie Metevia, For the reasons already assigned in Bill of Exception No. 3, Tr. 36020, State v. Samuel Robertson, the application for new trial was properly overruled by the trial judge. Tr. No. 36021 pp. 18-23 inclusive.
 

 The defendant, Wilbert (alias James) Coleman, eighteen (18) years of age, was sentenced to be confined in the State Penitentiary for a period of two (2) years and to pay a fine of $1. Tr. No. 36021, p. 23.
 

 The conviction and sentence appealed from by the defendant, Wilbert (alias James) Coleman, are affirmed.